CHRYSLER CORPORATION v SKYLINE INDUSTRIAL
SERVICES, INC

Docket No. 97396. Argued December 7, 1994 (Calendar No. 5). Decided March 7, 1995.

Chrysler Corporation, a Delaware corporation, and Skyline Industrial Services, Inc., a Michigan corporation, contracted for construction services to be performed by Skyline at Chrysler's Belvidere Assembly Plant in Illinois. The contract provided that Skyline would indemnify Chrysler, inter alia, for bodily injury arising out of the performance of the contract, referring to MCL 691.991; MSA 26.1146(1). The contract also contained a choice-of-law provision, electing Michigan law.

A Skyline employee was injured while working on a renovation project at Chrysler's plant in Illinois, and brought an action against Chrysler in an Illinois circuit court. Skyline declined indemnification, and the circuit court struck an indemnification claim by Chrysler as violative of Illinois law.

Chrysler then brought this action against Skyline and its insurer, Citizens Insurance Company, and others in the Wayne Circuit Court, seeking, inter alia, damages and a declaration that Skyline was obligated to indemnify Chrysler in the Illinois action. The court, Susan D. Borman, J., granted summary judgment for Chrysler, adopting Chrysler's argument that the place of performance of the indemnification was Michigan, although the contract was for services to be performed in Illinois. The court then found that the place of contracting was Michigan and that applying Michigan law, as specified in the indemnification clause, would best give effect to the parties' intentions at the time of contracting. The Court of Appeals, DOCTOROFF, C.J., and CAVANAGH and TAYLOR, JJ., reversed, accepting, arguendo, the circuit court's conclusion that Michigan law applied, but analyzed the choice-of-law question under 1 Restatement Conflict of Laws, 2d, §§ 187 and 188, and concluded that, although the place of contracting was Michigan, the place of performance and the location of the subject matter of the contract was Illinois, that the Illinois statute should apply, and that the indemnification clause in the contract was void (Docket No. 159855). Chrysler appeals.

In an opinion by Justice LEVIN, joined by Chief Justice

BRICKLEY, and Justices CAVANAGH, BOYLE, RILEY, and MALLETT, the Supreme Court *held:*

The Court of Appeals erred in applying Illinois law. Michigan law applies, and the indemnification clause is valid.

1. The predominant view in Michigan has been that a contract is to be construed according to the laws of the place where the contract was entered, although the trend nationally has been to adopt the Restatement approach emphasizing the law of the place having the most significant relation with the matter in dispute. The trend in the Michigan Supreme Court has been to move away from traditional choice of law conceptions toward a more policy-centered approach, abandoning the traditional lex loci doctrine for resolving conflicts between the tort laws of different states, and, rather, adopting a lex fori approach instead. The choice of lex fori was expanded in a case in which a Michigan resident was a defendant in a tort action in a Michigan court. The rigid "law of the place of contracting" approach has become outmoded in resolving contract conflicts. Rather, §§ 187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities.

2. In voiding the indemnification clause choosing Michigan law, the Court of Appeals considered the policies expressed in the Restatement 2d, §§ 187 and 188. While the Court correctly concluded that Illinois has a significant interest in this controversy and that Illinois public policy would most likely prevent indemnification, the Court gave insufficient weight to the effective choice of law made by the contracting parties and downplayed the significance of Michigan's interest in applying its own law to this dispute. The Court also should have engaged in an analysis of the purposes of the Illinois and Michigan statutes before concluding that public policy barred indemnification in this case. Although § 187(1) permits the application of the parties' choice of law if the issue is one the parties could have resolved by an express contractual provision, § 187(2) states two exceptions: the choice of law will not be followed (1) if the chosen state has no substantial relationship to the parties or the transaction, or when there is no reasonable basis for choosing that state's law, and (2) application of the chosen state's law is barred when it would be contrary to a fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of

applicable law in the absence of an effective choice of law by the parties.

3. Michigan has a substantial relationship to the parties and the transaction at issue here. Both companies have significant contacts with this state, as Chrysler's principal place of business and Skyline's place of incorporation. Michigan was both the place of negotiation and the place of contracting. Thus, the parties had good reason to choose Michigan law for the contract. The question is whether Illinois has a materially greater interest than Michigan sufficient to ignore the parties' reference to Michigan law. Because the place of performance of the indemnification is unclear, merely because the contract was for construction in Illinois does not provide a compelling basis for concluding that Illinois has a materially greater interest than Michigan regarding indemnification. With respect to the injury the appropriate focus is on the injury as a whole, rather than the portion of damages attributable to the indemnitee. Michigan and Illinois both have sought to limit indemnification agreements. Depending on how the purpose of the public policy is framed, either state's policy might be violated by the application of the other's statute. This potential conflict suggests that, at a minimum, Michigan has as much an interest as Illinois in regulating this business practice and applying its law to this controversy.

4. Additional fairness issues implicated in the contractual relationship to be considered are: Skyline procured insurance, as required by the contract, with the expectation of insuring against negligence within the limits of the Michigan statute; this lawsuit concerns two Michigan corporations, with a long-standing business relationship, who contracted in Michigan and chose Michigan law to govern their contractual relationship; both parties apparently acted as if Michigan law would apply. There is no reason to void the parties' express preference for Michigan law in the absence of compelling evidence that Illinois has a materially greater interest than Michigan.

Reversed and remanded.

Justice WEAVER took no part in the decision of this case.

199 Mich App 366; 502 NW2d 715 (1993) reversed.

*Feikens, Foster, Vander Male, Bellamy & Gilchrist, P.C.* (by *Roger L. Wolcott*), for the plaintiff.

*Loesch & Ball* (by *Patrick D. Ball*) for the defendant.

Levin, J. The question presented concerns a conflict of Illinois and Michigan law.

Plaintiff Chrysler Corporation and defendant Skyline Industrial Services, Inc., entered into a contract for construction services to be performed by Skyline in Illinois. The contract provided that Skyline would indemnify and hold Chrysler harmless from Chrysler's negligence. Such an indemnification provision in a construction contract is void under an Illinois statute,[1] but valid under a Michigan statute unless the indemnitee is solely negligent.[2]

Chrysler and Skyline have significant Michigan contacts, and the contract contained an indemnification provision referring to the Michigan statute.[3]

The circuit judge granted Chrysler's motion for summary disposition on the issue of indemnification, holding that Michigan law was applicable. The Court of Appeals reversed relying on 1 Restatement Conflict of Laws, 2d, §§ 187-188, pp 561-575, holding that Illinois law was applicable, and

---

[1] With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable. [Illinois Structural Work Act, Ill Rev Stat, ch 740, § 35/1 (formerly Ill Rev Stat, ch 29, ¶ 61).]

[2] A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable. [MCL 691.991; MSA 26.1146(1).]

[3] See n 2.

that the disputed clause was unenforceable because it violated Illinois law.

Although the Court of Appeals was correct in considering the Restatement approach, we conclude, on the facts of this case, that it erred in applying Illinois law. Michigan law applies, and the indemnification clause is valid.

I

Chrysler is a Delaware corporation with its principal place of business in Michigan. Skyline is a Michigan corporation.

In the spring, 1986, Chrysler contracted with Skyline, in Michigan, to paint and renovate Chrysler's Belvidere Assembly Plant in Illinois. The negotiations for this contract mainly occurred in Michigan. The contract contained a reference to Chrysler's purchase order general terms and conditions, which included indemnification.[4] Subse-

---

[4] The relevant portions are:

> Seller shall *protect, defend, hold harmless, and indemnify* Purchaser from and against any and all loss, cost, damage, expense, claims, or legal actions, whether groundless or not, arising out of the bodily injury, sickness, or disease (including death resulting at any time therefrom) which may be sustained or claimed by any person or persons, and the damage or destruction of any property, including the loss of use thereof, arising out of or related to the performance of any work in connection with this contract, including any extra work assigned to Seller in connection therewith, based upon any act or omission, negligence or otherwise, of (a) Seller or any of its employees, agents, or servants, (b) any Subcontractor of Seller or any employees, agents, or servants of such a Subcontractor, and/or (c) any other person or persons, including Purchaser, or any employees, agents, or servants of Purchaser. *This indemnification shall include, but shall not be limited to, the obligation by Seller to protect, defend, hold harmless, and indemnify Purchaser from and against any and all claims for bodily injury, sickness, or disease (including death resulting at any time therefrom) and damage to property, based upon or alleged to have arisen out of (1) the sole active or passive negligence of Purchaser (except as prohibited by Michigan Compiled Laws*

quently, in 1987, the purchase order general terms were amended to specify the law of Michigan as governing.[5]

On June 17, 1986, a Skyline employee, Richard Pfaff, was injured while working at the Belvidere plant.[6] Chrysler commenced this action in Wayne

*Annotated Sec. 691.991 [MSA 26.1146(1)]);* (2) the joint and/or concurrent active or passive negligence of Purchaser and Seller; (3) the joint and/or concurrent active or passive negligence of Purchaser and any Subcontractor of Seller; (4) the joint and/or concurrent active or passive negligence of Purchaser and any other person or persons; (5) the joint and/or concurrent active or passive negligence of Seller and any other person or persons; (6) the joint and/or concurrent active or passive negligence of any Subcontractor of Seller and any other person or persons; (7) Purchaser's failure to provide a safe place to work; and/or (8) Purchaser's failure to take proper or reasonable safety precautions or exercise proper control with respect to the conduct of an inherently dangerous activity on or off its premises; and Seller shall, at its own cost and expense, defend any such claims and any suit, action, or proceeding which may be commenced thereunder, and Seller shall pay any and all judgments which may be recovered in any such suit, action, or proceeding, and any and all expense, including but not limited to, costs, attorneys' fees, and settlement expenses which may be incurred therein. [Emphasis added.]

[5] The general terms, in pertinent part, provide:

This order and all transactions between Chrysler Motor Corporation and Seller will be governed by and construed in accordance with the laws of Michigan as if entirely performed therein.

[6] Pfaff commenced an action against Chrysler in an Illinois circuit court, alleging violations of the Illinois Structural Work Act, Ill Rev Stat, ch 48, ¶ 60 *et seq.* Chrysler filed a third-party complaint against Skyline, claiming, among other issues, breach of contract and indemnification. On June 29, 1989, the Illinois court struck the indemnification and breach of contract claims because they violated the Illinois statute. The court dismissed the claims without prejudice and granted Chrysler leave to amend its complaint. Chrysler filed an amended complaint without the indemnification and breach of contract claims, thereby withdrawing them from the Illinois action.

In the Illinois circuit court, Skyline contended that the dismissal of these claims precluded Chrysler from filing an action in Michigan. The Illinois court ruled that its dismissal was not a final order, but, nevertheless, issued an order enjoining Chrysler from maintaining an action in Michigan. In *Pfaff v Chrysler Corp,* 155 Ill 2d 35, 63-64; 610

Circuit Court, alleging breach of contract and seeking a declaratory judgment. Both Chrysler and Skyline moved for summary disposition on the indemnification issue.[7] The circuit court denied Skyline's motion and granted Chrysler's motion.[8] The circuit court adopted Chrysler's argument that the place of performance of the indemnification was Michigan, although the contract was for services to be performed in Illinois. The circuit court found that the place of contracting was Michigan and that applying Michigan law, referred to in the indemnification clause, would best give effect to the parties' intentions at the time of contracting.[9]

---

NE2d 51 (1992), the Illinois Supreme Court held that Chrysler could proceed with the Michigan action against Skyline on the previously dismissed claims. The court said:

> [T]here was nothing to prevent Chrysler from proceeding elsewhere as though the stricken and dismissed actions had never been commenced. The jurisdiction of the trial court was not evaded simply because Chrysler chose to refile actions elsewhere which the court had stricken and dismissed without prejudice and with leave to amend. [Citations omitted.]

[7] Skyline also contended that Chrysler had failed to enforce a contractual provision requiring Skyline to insure both itself and Chrysler for any liability arising out of the execution of the contract. Skyline contended that Chrysler had waived its right to be named on Skyline's insurance certificates. Skyline argues that Chrysler should be precluded from obtaining indemnification because the liability would have been covered under the insurance policy. Because the Court of Appeals did not address this issue, we express no opinion regarding its merits.

[8] The circuit court relied on its analysis in an opinion in an earlier action against Skyline brought by Richard Young. The Young case was dismissed pursuant to an agreement between the parties in which Skyline agreed to indemnify Chrysler.

[9] The circuit court said:

> It is hard to imagine that the parties would agree to the performance of certain contractual provisions with the intent that the validity and interpretation of these provisions would be governed by a state's law which rendered these contractual provisions completely unenforceable. Since one can assume that

The Court of Appeals reversed.[10] The Court accepted, arguendo, the circuit court's conclusion that Michigan law applied.[11] Relying on a footnote in *Hardy v Monsanto Enviro-Chem Systems, Inc,*[12] adverting to 1 Restatement Conflict of Laws, 2d, § 187,[13] the Court of Appeals analyzed the choice-of-law question under § 187 and 1 Restatement Conflict of Laws, 2d, § 188.[14] The Court concluded

the parties meant that the various provisions in their contracts were to be valid—at least under some circumstances—it is only by resort to Michigan law that their intent can be carried out.

[10] 199 Mich App 366; 502 NW2d 715 (1993).

[11] *Id.* at 369.

[12] 414 Mich 29, 86, n 60; 323 NW2d 270 (1982).

[13] Section 187 provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) in the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

[14] Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties

that, although the place of contracting was Michigan, the place of performance and the location of the subject matter of the contract—Pfaff's action commenced in Illinois—was Illinois.[15] The Court observed that comment c to § 188, p 578, indicates that the place where the contract was to be performed had the more significant interest in enforcing a statute designed to regulate or deter specific business practices.[16] The Court concluded that the Illinois statute should apply, and the indemnification clause was void.[17]

II

The Court of Appeals engaged in an extensive analysis of the conflict of laws issue. The question whether to adopt the Restatement approach to resolve conflict of laws issues was not squarely

(see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contracts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

[15] 199 Mich App 371-372.

[16] Id. at 372.

[17] The Court of Appeals also observed that Illinois has a strong policy against indemnification as expressed in the Illinois statute, noting that "[t]he purpose of the Illinois statute is to prevent injuries to persons employed in dangerous and extrahazardous occupations, so that negligence on their part in the manner of doing their work might not prove fatal." Id. at 372.

presented in *Hardy*.[18] In footnote 60, Justice
MOODY cited § 187, and a series of older Michigan
cases analyzing choice-of-law provisions, in support
of the view that when the parties have agreed to
an explicit choice of law, that choice will be re-
spected unless there are compelling reasons for
not doing so.

The predominant view in Michigan has been
that a contract is to be construed according to the
law of the place where the contract was entered
into.[19] The trend nationally, however, has been to
adopt the Restatement approach emphasizing the
law of the place having the most significant rela-
tion with the matter in dispute.[20] Thus,

> [A]lthough affording less certainty and predicta-
> bility than rigid general rules traditionally fol-
> lowed by the courts, [this approach] has merit in
> giving to the place having the most interest in the
> problem paramount control over the legal issues,
> thus allowing the forum to apply the policy of the
> jurisdiction most intimately concerned with the
> outcome of the litigation, and in enabling the
> court, not only to reflect the relative interests of
> the several jurisdictions involved, but also to give
> effect to the probable intention of the parties and
> consideration to the best practical result. [16 Am
> Jur 2d, Conflict of Laws, § 83, p 141.]

The trend in this Court has been to move away
from traditional choice-of-law conceptions toward a

---

[18] *Id.* at 85.

[19] See *Grossman v Aristech Chemical Corp*, 882 F Supp 110 (WD
Mich, 1994); *Meijer, Inc v General Star Indemnity Co*, 826 F Supp
241, 244 (WD Mich, 1993); see also *Rubin v Gallagher*, 294 Mich 124,
128; 292 NW 584 (1940); *Voorheis v People's Mutual Benefit Society of
Elkhart, Indiana*, 91 Mich 469, 473; 51 NW 1109 (1892).

[20] See 16 Am Jur 2d, Conflict of Laws, § 83, pp 140-141; Scoles &
Hay, Conflict of Laws (2d ed), § 18.8, pp 673-674.

more policy-centered approach.[21] In *Sexton v Ryder Truck Rental, Inc,* 413 Mich 406; 320 NW2d 843 (1982), this Court abandoned the traditional lex loci doctrine for resolving conflicts between the tort laws of different states, overruling *Abendschein v Farrell,* 382 Mich 510; 170 NW2d 137 (1969).[22] Justice WILLIAMS, writing for a plurality of justices, observed that the lex loci approach had not been consistently applied and had lost the power of consistency that had been its hallmark.[23] Adopting a lex fori approach in its stead, Justice WILLIAMS said:

> As a consequence of these premises, in the normal common-law tradition, we hold that where Michigan residents or corporations doing business in Michigan are involved in accidents in another state and appear as plaintiffs and defendants in Michigan courts, the courts will apply the *lex fori,* not the *lex loci delicti,* and we do so without reference to any particular state policy. We reach this conclusion on the facts and reasoning herein developed. We do not here adopt the law of dominant contacts or any other particular methodology, although any such reasoning may, of course, be argued where persuasive and appropriate. [*Id.* at 433.]

Among the reasons for applying lex fori, Justice WILLIAMS noted that "the forum state generally has an interest in seeing that its injured citizens are well-served and that its citizen defendants are

---

[21] See Sedler, *Choice of law in Michigan: Judicial method and the policy-centered conflict of laws,* 29 Wayne L R 1193 (1983).

[22] *Abendschein* had been criticized by a number of commentators, most notably Professor Sedler, who argued for a policy-centered approach to the resolution of conflicts in tort cases. See Sedler, *Choice of law in Michigan: A time to go modern,* 24 Wayne L R 829 (1978); see also Sedler, *Judicial method,* n 21 *supra.*

[23] *Id.* at 432-433.

afforded every protection that such citizens would have in their own state."[24]

In *Olmstead v Anderson*,[25] *Sexton* was reaffirmed, and the choice of lex fori was expanded in a case in which a Michigan resident was a defendant in a tort action in Michigan.[26]

The resolution of the conflicts presented in *Sexton* and *Olmstead* does not mandate that we endorse one particular analytical method over another for resolving contract law conflicts.[27] Underlying the holdings in *Sexton* and *Olmstead* was the view that resolving conflicts questions requires moving beyond traditional rules. Much as lex loci delicti had proven too inflexible for resolution of tort conflicts, the rigid "law of the place of contracting" approach has become outmoded in resolving contract conflicts. Rather, §§ 187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities.[28]

[24] *Id.* at 433.

[25] 428 Mich 1; 400 NW2d 292 (1987).

[26] The Court noted that, although the case involved an accident in Wisconsin, no Wisconsin resident was a party, and said that the application of lex loci delicti would "not advance the conceptual rationales underlying the doctrine." *Id.* at 30. Wisconsin law provided limited recovery in wrongful death actions, but Michigan law, where defendant resided, and Minnesota law, where plaintiff resided, did not so limit recovery. The Court concluded that Michigan law applied.

[27] See *Sexton, supra* at 442-443 (opinion of LEVIN, J.).

[28] This Court has not been asked by the parties to explicitly abandon the "law of the place of contracting" as a basis for determining choice of law and we decline to do so here. Rather, it is important to clarify that that rule may prove to be unworkable under certain factual situations, such as those presented here, which demand a more extensive review of the relative interests of the parties and the interested states.

The Restatement approach has been criticized by some commentators who contend that it is unpredictable, difficult to apply, unconstitutional and gives too little weight to the rights of the parties. See

In the instant case, there is an explicit reference to the Michigan statute in the indemnification clause. Our concern is to balance the expectations of the parties with the interests of Michigan and Illinois. As the comments to § 187 of the Second Restatement state, "Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."[29] But, "[f]ulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation."[30]

Were we to be faced with a different factual scenario, the relative balance of these concerns might be different. We cannot foresee other factual scenarios that might appear before a court. It is sufficient to say that the concerns for certainty and public policy expressed in the Second Restatement reflect sound considerations that may guide a court in resolving specific conflicts between the contract laws of different states.

### III

In voiding the indemnification clause choosing Michigan law, the Court of Appeals considered the

Kramer, *Rethinking choice of law,* 90 Colum L R 277, 278 (1990) (discussing the criticisms leveled at the approach of the Second Restatement). Professor Kramer suggests several canons of construction for courts in resolving conflicts questions. They include examining comparative impairment (applying the law of the state whose law would be rendered practically ineffective if not applied), *id.* at 323-324, and applying the parties' choice of law or, in the absence of an effective choice, the law that validates the contract. *Id.* at 329-333. Professor Sedler proposes that the law of the forum should apply and only be displaced when "considerations of policy or fairness to the parties required such displacement in the particular case." Sedler, *Judicial method,* n 21 *supra* at 1198. We need not address all possible arguments in this debate. The lack of consensus among commentators suggests caution.

[29] Comment e to Restatement, § 187, p 565.

[30] Comment g to Restatement, § 187, p 567.

policies expressed in the Second Restatement, §§ 187 and 188. While the Court correctly concluded that Illinois has a significant interest in this controversy and that Illinois public policy would most likely prevent indemnification, the Court gave insufficient weight to the effective choice of law made by the contracting parties and downplayed the significance of Michigan's interest in applying its own law to this dispute. The Court also should have engaged in an analysis of the purposes of the Illinois and Michigan statutes before concluding that public policy barred indemnification in this case.

Our analysis starts where the Court of Appeals started, with § 187 of the Restatement, 2d. Although § 187(1) permits the application of the parties' choice of law if the issue is one the parties could have resolved by an express contractual provision, § 187(2) states two exceptions. Section 187(2)(a) provides that the choice of law will not be followed if the chosen state has no substantial relationship to the parties or the transaction, or when there is no reasonable basis for choosing that state's law. Section 187(2)(b) bars the application of the chosen state's law when it "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

Michigan has a substantial relationship to the parties and the transaction at issue here. Both companies have significant contacts with this state, as Chrysler's principal place of business and Skyline's place of incorporation.[31] Michigan was

---

[31] The Court of Appeals concluded that it would not be useful to

both the place of negotiation and the place of contracting. The parties had good reason to choose Michigan law for the contract.

The Court of Appeals concluded that the parties' choice of law was contravened by Restatement, § 187(2)(b).[32] This section requires an inquiry whether Illinois has a materially greater interest than Michigan (and, under § 188, would have been the state of applicable law in the absence of the Michigan choice of law) and whether the indemnification provision would have been contrary to a fundamental policy of Illinois.

In determining that Illinois had a materially greater interest, the Court of Appeals focused mostly on the "place of performance" factor of § 188.[33] As the place of performance of the construction work, Illinois has a strong interest in ensuring that the parties conform to its laws. Thus, the Court of Appeals correctly noted that Illinois would have great interest in deterring specific construction practices; however, the question is whether Illinois has a *materially greater* interest than Michigan sufficient to ignore the parties' choice of Michigan law.[34] It is questionable whether Illinois has a greater interest in reaching

assign a domicile to either corporation. 199 Mich App 371; see also § 188 of 1 Restatement Conflict of Laws, 2d, pp 575, 581. While both parties engage in business outside Michigan, Skyline was organized under Michigan law, and it is in Michigan that Chrysler has chosen to locate its world headquarters as its principal place of business. Regardless of where the contract was to be performed, clearly no other state initially has a greater interest in regulating the conduct of these parties than Michigan. See comment e to § 188 of 1 Restatement Conflict of Laws, 2d, p 581 ("The fact that one of the parties is domiciled or doing business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of performance or the place where the other party to the contract is domiciled or does business").

[32] 199 Mich App 371-372.

[33] See § 188(2)(c) of 1 Restatement Conflict of Laws, 2d, p 575.

[34] The Court of Appeals cited a comment to § 188 of the Second Restatement, which states that the " 'state where a contract provides

into the contractual arrangements of out-of-state companies when those companies have negotiated an agreement in their own state concerning the relative liability obligations between them.[35]

The circuit court correctly noted that the place of performance may not have been Illinois, but Michigan. Other courts have taken the view that the place of performance of an indemnification agreement is the place where the indemnitee is found subject to liability.[36] Since the place of performance of the indemnification is unclear, merely because the contract was for construction in Illinois does not provide a compelling basis for concluding that Illinois has a "materially greater interest" than Michigan regarding indemnification.[37]

that a given business practice is to be pursued has an obvious interest in the application of its rule designed to regulate or to deter that business practice.' " 199 Mich App 371-372 (citing comment c to § 188 of the Second Restatement, p 578). In addition, the Court noted § 202 of the Second Restatement, which provides that " '[w]hen performance is illegal in the place of performance, the contract will usually be denied enforcement.' " 199 Mich App 372.

[35] We distinguish indemnification from health and safety requirements that directly relate to the manner in which construction work is performed. Illinois has a far less significant interest in controlling how two Michigan companies apportion liability for negligence than it has in assuring that the companies comply with Illinois worksite requirements.

Moreover, § 188(2) lists other factors, such as place of contracting, place of negotiation, the location of the subject matter and the domiciles of the parties, at least three of which point to applying Michigan law, even in the absence of an effective choice of law.

[36] See *Grossman*, n 19 *supra* at 113; *Meijer*, n 19 *supra* at 244; *Liberty Mutual Ins Co* v *Vanderbush Sheet Metal Co*, 512 F Supp 1159, 1168 (ED Mich, 1981).

[37] The Ohio Supreme Court reached a similar conclusion in *Jarvis v Ashland Oil, Inc*, 17 Ohio St 3d 189, 192; 478 NE2d 786 (1985). In *Jarvis*, the plaintiff was an Ohio resident who was injured while working on a job for a contractor, Union, in New York State at one of Ashland's sites. Union, a West Virginia corporation, and Ashland, a Kentucky corporation, specified that Kentucky law would govern their contract and the contract included an indemnification provision similar to the one at issue in the case at bar. (Ohio had a statute that voided such indemnification agreements.) Union challenged the valid-

The Court of Appeals assumed that there was a conflict between Illinois and Michigan public policy on the question of indemnification. As the Illinois Supreme Court noted,

> [B]y filing in Michigan, Chrysler has not necessarily gained the benefit of more favorable substantive law. With the exception of a claim based on breach of contract for the failure to procure insurance, the Michigan complaint seeks recovery and judgment based on contractual indemnification. Michigan Compiled Laws § 691.991 [MSA 26.1146(1)] (1987), titled "Void Construction Contracts," provides that agreements to indemnify for liability for damages resulting from one's sole negligence is against public policy, void and unenforceable. Michigan's law is quite similar in scope and purpose to the Illinois Construction Contract Indemnification for Negligence Act (Ill Rev Stat 1987, ch 29, par 61), on which the trial court relied to dismiss Chrysler's contractual indemnity counts. Both Acts were intended to arrest efforts to contractually avoid liability for negligence. [*Pfaff v Chrysler Corp*, 155 Ill 2d 35, 64; 610 NE2d 51 (1992).]

The Court of Appeals has held that it is against public policy for a party to construction or mainte-

ity of the indemnification provision and urged the court to apply Ohio law. Applying the analysis of § 187, the Ohio court concluded that Ohio *did not* have a materially greater interest than Kentucky in this matter and held that Kentucky law should be applied to uphold the provision.

The court noted that, although Jarvis was an Ohio resident, it was Ashland and Union that had entered into the agreement. Rather than rewrite the provision, the court held that "where the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of this state, the law of Ohio will only be applied when it can be shown that this state has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* See also *Brunner v Quantum Chemical Corp,* 1993 WL 74763 (Ohio App) (upholding an indemnification clause and Kentucky choice of law in the contract because Ohio did not have materially greater interest, although it was the place of performance).

nance contracts to require another party to pur-
chase insurance to cover the other party's sole
negligence.[38] The Court has also held that the
Michigan statute[39] requires focus on the cause of
the resulting harm in deciding whether an indem-
nitee would be indemnified for its sole negligence
in violation of the statute.[40] The appropriate focus
is thus on the injury as a whole, rather than the
portion of damages attributable to the indemni-
tee.[41]

The Illinois Supreme Court said that the Illinois
statute[42] protects

> workers in the industry and the public as well
> from dangers associated with construction work.
> The statute would thwart attempts to avoid the
> consequences of liability and thereby insure a
> continuing motivation for persons responsible for
> construction activities to take accident prevention
> measures and provide safe working conditions.[43]

Whether this was the actual motivation for the
legislation,[44] Illinois courts have held that prohibit-

[38] *Sentry Ins Co v Nat'l Steel Corp,* 147 Mich App 214, 221; 382
NW2d 753 (1985).

[39] See n 2.

[40] *Paquin v Harnischfeger Corp,* 113 Mich App 43; 317 NW2d 279
(1982).

[41] *Sherman v DeMaria Building Co,* 203 Mich App 593, 601; 513
NW2d 187 (1994); *Fischback-Natkin Co v Power Process Piping, Inc,*
157 Mich App 448, 460; 403 NW2d 569 (1987).

[42] See n 1.

[43] *Davis v Commonwealth Edison Co,* 61 Ill 2d 494, 499; 336 NE2d
881 (1975).

[44] One judge commented that the Illinois Supreme Court failed to
cite any legislative history for its assumption that the prohibition
against indemnification was to ensure that those responsible for
safety at construction sites do not become lax. *Bethlehem Steel Corp v
GC Zarnas & Co,* 304 Md 183, 211; 498 A2d 605 (1985) (Rodowsky, J.,
dissenting). Judge Rodowsky said:

> [I]t is difficult to accept the theory that one who is responsi-

ing indemnification agreements in construction
contracts is a "fundamental policy" in Illinois.[45]

---

> ble for construction site safety would adopt a devil-may-care
> attitude in reliance on a contractual indemnification obtained
> from someone else associated with the job when the contractual
> indemnification is only as good as the financial strength of the
> indemnitor, particularly if the indemnitor is uninsured or
> underinsured for the risk. [*Id.*]

Judge Rodowsky suggested that the New York courts have more
closely analyzed the purpose of these statutes, quoting *Quevedo v City
of New York,* 56 NY2d 150, 155-156; 451 NYS2d 651; 436 NE2d 1253
(1982), which stated:

> "[T]he Legislature sought to prevent the practice of requiring
> *contractors or subcontractors* to assume liability for the negli-
> gence of others, thereby increasing their insurance costs and
> thus the costs of construction . . . ." [*Id.* at 213.]

Thus, it is questionable whether the purpose of statutes prohibiting
indemnification for construction negligence is to protect the safety
and health of workers and the public, as the Illinois courts have
suggested. We need not disregard how the Illinois courts have charac-
terized their public policy. Neither are we bound to accept their
characterization if it would result in an effect contrary to Michigan
law or would be employed to accord extraterritorial reach to the
Illinois statute.

[45] See *Lyons v Turner Construction Co,* 195 Ill App 3d 36, 41; 551
NE2d 1062 (1990); *Donaldson v Fluor Engineers, Inc,* 169 Ill App 3d
759, 764; 523 NE2d 1113 (1988); see also *Bethlehem Steel Corp v GC
Zarnas & Co,* n 44 *supra* at 190 ("Unless there is a contrary indica-
tion elsewhere, and absent constitutional considerations, the General
Assembly's explicit determination of public policy is sufficient in a
case like this to override the *lex loci contractus* principle").

There are some difficulties in determining what is a "fundamental
policy." The commentary to § 187 suggests that "a fundamental policy
may be embodied in a statute which makes one or more kinds of
contracts illegal or which is designed to protect a person against the
oppressive use of superior bargaining power." Comment g to § 187 of
the Restatement, 2d, p 568. Professor Sedler wrote:

> What, it may be asked, makes the policy of protecting in-
> sureds a "fundamental" one under the rubric of section 187(2)(b)?
> In my view, the answer is obvious. The domicile has a clear
> interest in applying that policy for the benefit of its residents
> and in regulating the conduct of companies that insure its
> residents or their property. This becomes particularly evident
> when we consider an agreement to insure property located
> outside the forum. In that situation, the interests of the forum
> in regulating insurance companies are much less clear, and the

Michigan and Illinois both have sought to limit indemnification agreements. Depending on how one views the purpose of the public policy, either state's policy might be violated by the application of the other's statute.[46] The application of the Illinois statute might offend the public policy of Michigan reflected in the Legislature's decision to prohibit indemnification only when the indemnitee is solely negligent.[47] This potential conflict suggests that, at a minimum, Michigan has as much an interest as Illinois in regulating this business practice and applying its law to this controversy.

There are additional fairness issues implicated in the contractual relationship between Chrysler and Skyline that should be considered. Skyline procured insurance, as required by the contract, with the expectation of insuring against negligence within the limits of the Michigan statute.[48]

This lawsuit concerns two Michigan corporations, with a longstanding business relationship, who contracted in Michigan and chose Michigan law to govern their contractual relationship.[49] Both

---

application of its law might be unfair to the insurer. An express choice of law should therefore be recognized. Analogous considerations apply in all instances where contractual provisions trench upon strong policies of the forum. [Sedler, *The contracts provisions of the Restatement (Second): An analysis and a critique,* 72 Colum L R 279, 296 (1972).]

[46] In *Kramer v Bally's Park Place, Inc,* 311 Md 387, 392-398; 535 A2d 466 (1988), the Maryland Court of Appeals refused to void a New Jersey contract for gambling debts. The court held that Maryland public policy against gambling was not sufficiently strong to disregard lex loci contractus because the Maryland Legislature had already authorized limited forms of gambling.

[47] This would not automatically follow, however, if Chrysler was adjudged to be solely negligent. In that circumstance, both statutes would have the identical effect of voiding indemnification.

[48] Skyline entered into numerous construction contracts with Chrysler for the provision of construction services.

[49] The cases cited by the Court of Appeals involved different interests than those at stake here. 199 Mich App 372-374. In *Young v*

parties apparently acted as if Michigan law would apply. We decline to void the parties' express preference for Michigan law in the absence of compelling evidence that Illinois has a materially greater interest than Michigan.

The judgment of the Court of Appeals is reversed and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, and MALLETT, JJ., concurred with LEVIN, J.

---

*Mobil Oil Corp,* 85 Or App 64, 72; 735 P2d 654 (1987), the Oregon Court of Appeals relied on specific legislative history and case law to support its holding that third-party indemnification would undermine the state's worker's compensation scheme. The court said that the application of an indemnification clause governed by New York law in the Oregon courts would enable contracting parties to "circumvent the workers compensation laws by choosing the law of another jurisdiction to govern their agreement . . . ."

In *Triad Financial Establishment v Tumpane Co,* 611 F Supp 157 (ND NY, 1985), and *Keystone Leasing Corp v Peoples Protective Life Ins Co,* 514 F Supp 841 (ED NY, 1981), there were far less significant contacts with the state of chosen law than in the instant case. The Appellate Division of the New Jersey Superior Court in *McCabe v Great Pacific Century Corp,* 222 NJ Super 397, 400-401; 537 A2d 303 (1988), held that the parties had failed to make an effective choice of law and, thus, applied New Jersey law as the place of performance.

Neither does *Hardy, supra,* address the situation before the Court, since the choice of Illinois law there at issue was explicit and the party seeking to avoid the application of Illinois law presented no reason why that choice should not be enforced. Justice MOODY wrote, "Leonard drafted this contract. It cannot now claim surprise concerning the contents of the contract. Further, Leonard has not advanced any argument why the parties' agreement should not be enforced." *Id.* at 85. Similarly, Skyline does not contend that it was surprised by the Michigan choice-of-law provision, nor does it advance any reason, other than the Illinois statute, why the choice should not be respected. See *Allen v Michigan Bell Telephone Co,* 18 Mich App 632; 171 NW2d 689 (1969) (suggesting that unconscionability and vast inequalities in bargaining may justify abrogating a specific contractual provision); see also *Moses v Business Card Express, Inc,* 929 F2d 1131, 1139 (CA 6, 1991) (citing comment c to 1 Restatement Conflict of Laws, 2d, § 201, p 642, for the view that a choice of law will be denied enforcement if misrepresentation, undue influence, or mistake were responsible for a party's adherence).

WEAVER, J., took no part in the decision of this case.