*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GENERAL MEDICINE OF LOUISIANA, P.C.,

      Plaintiff-Appellee,

v

GEORGE SINGLETARY, M.D.,

      Defendant-Appellant.

UNPUBLISHED
February 12, 2019

No. 340298
Oakland Circuit Court
LC No. 2016-153535-CB

Before: GLEICHER, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

This breach of contract case presents a preliminary question: which state's law applies? The plaintiff, a Louisiana professional service corporation, has sued its former Louisiana employee in a Michigan court. Plaintiff's parent corporation is located in Michigan, and the parties' contract included Michigan forum-selection and choice-of-law clauses. But under Michigan's conflict-of-laws rules, a choice-of-law provision is not enforced if doing so conflicts with a fundamental policy of a state with a materially greater interest in the outcome. Under Louisiana law, the contract's choice-of-law and forum-selection clauses are unenforceable. Given that all of the relevant events in this case occurred in Louisiana, that state has an interest superior to Michigan's. When the forum-selection clause is taken out of the equation, it is clear that Louisiana presents a more reasonably convenient forum for trial of this dispute. Accordingly, we reverse the circuit court's decision to the contrary and remand for entry of summary disposition in defendant's favor.

## I. BACKGROUND

In 2010, General Medicine of Louisiana, P.C. (GMLP) hired Dr. George Singletary to provide medical care in certain Louisiana nursing home and long-term care facilities. Singletary's original contract term was 18 months. Thereafter, the contract automatically renewed for one-year terms unless Singletary gave GMLP 180 days' notice that he did not intend to renew the relationship. In April 2016, in the middle of a contract term, Singletary announced his intent to resign; he stopped working on July 10, 2016. In the meantime, GMLP filed suit in

Oakland Circuit Court for breach of contract and anticipatory breach. GMLP chose a Michigan forum based on the following provisions in Singletary's employment contract:

> 10.3 **Choice of Forum**. The parties agree that all actions arising directly or indirectly out of this Agreement shall be filed only in the Circuit Court for the County of Oakland, State of Michigan, and the parties hereby irrevocably consent to the personal jurisdiction of that Court over the parties to this Agreement.

> 10.4 **Governing Law.** This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Michigan.

GMLP's parent corporation, General Medicine, P.C., is located in Oakland County.

GMLP and Singletary filed competing motions for summary disposition. GMLP asserted that there was no question that Singletary breached his employment contract, entitling it to relief. Singletary contended that the Michigan court lacked personal jurisdiction over him, that the action was brought in an improper venue, and the forum was not convenient. Singletary asserted that Louisiana law applied despite the choice-of-law provision in the contract and that Louisiana law prohibited the enforcement of forum-selection and choice-of-law provisions in employment contracts. In response to GMLP's summary disposition motion, Singletary presented evidence that he had been disabled from working, excusing his early termination of the contract.

The circuit court denied GMLP's summary disposition motion, finding a question of fact regarding Singletary's condition that could have excused his termination of the contract. The court also denied Singletary's motion to dismiss based on the contractual forum-selection and choice-of-law provisions, as well as Michigan law upholding the enforceability of such provisions. Because the contract afforded the court with personal jurisdiction over both parties, the court applied MCL 600.745(2), which provides:

> If the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur:

> (a) The court has power under the law of this state to entertain the action.

> (b) This state is a reasonably convenient place for the trial of the action.

> (c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.

> (d) The defendant is served with process as provided by court rules.

The court observed that for personal jurisdiction purposes, the sole point of contention was subsection (b): whether Michigan was a reasonably convenient place for trial. Michigan met that standard, the court ruled, because by executing a contract with a choice-of-forum clause, a party usually waives any complaint that the chosen forum is inconvenient. The court also found

that Michigan was a reasonably convenient forum based on the forum non conveniens factors listed in *Cray v Gen Motors Corp*, 389 Mich 382; 207 NW2d 393 (1973). GMLP's essential business operations and pertinent records are located in Oakland County, the court observed, and testimony from Louisiana residents could be presented by de bene esse depositions or video conferencing. Since the action concerns breach of contract, it was not necessary for the court to be close to the incident which gave rise to the lawsuit. While Michigan might not be the most convenient forum in which to try the action, the court found that it was a reasonably convenient forum. Accordingly, the circuit court decided to "enforce the parties' clear intent as expressed in their written contract and deny Defendant's motion to dismiss for lack of personal jurisdiction."

The court rejected Singletary's motion to dismiss on forum non conveniens grounds based on the same reasoning. And the court found that Singletary waived any objection to venue by failing to file a motion to change venue in response to the complaint as required by MCR 2.221(A). Finally, the court rejected Singletary's argument that the choice-of-law provision should not be enforced, explaining:

> Michigan's interests mandate that Michigan law be applied for the reasons that the parties specifically contracted for Michigan law to govern the enforcement of the Employment Agreement. Again, the court notes that the parties knowingly entered into an Employment Agreement that contains a choice of law provision that identifies Michigan law as the governing law. Michigan public policy favors choice of law provisions and so the court finds that Michigan law shall be applied in this matter.

Singletary filed an application for leave to appeal the court's rulings regarding venue, forum non conveniens, and choice of law in this Court. We granted the application. *Gen Med of Louisiana PC v George Singletary, MD*, unpublished order of the Court of Appeals, entered February 22, 2018 (Docket No. 340298).[1]

## II. LOUISIANA LAW APPLICABLE

The initial question we confront is whether Michigan or Louisiana law applies in this lawsuit. The order in which we consider the issues presented is critical to the ultimate resolution of this appeal. If Louisiana law applies under Michigan's choice-of-law principles, the "governing law" provision in the contract evaporates. Furthermore, under Louisiana law, forum-selection clauses contained in employment contracts are "null and void." La Rev Stat § 23:921(A)(2). Absent the forum-selection clause, the question is whether Michigan is a more convenient location for trial than Louisiana.

---

[1] While this appeal was pending, the circuit court granted GMLP's renewed motion for summary disposition because Singletary's alleged health condition did not amount to a "disability" as defined by the employment contract.

The propriety of considering the issues in this order is not without controversy. At least one state (Missouri) prefers a different approach.[2] Luckily, this Court has already resolved the question of which issue goes first, observing in *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 346 n 2; 725 NW2d 684 (2006), that when a contract contains both forum-selection and choice-of-law clauses, before applying the forum-selection clause a court must "necessarily . . . first determine under its own law whether the contractual choice-of-law provision is itself enforceable." In support of this proposition, this Court cited a Wisconsin case, *Beilfuss v Huffy Corp*, 2004 Wi App 118; 274 Wis 2d 500; 685 NW2d 373 (2004). In *Beilfuss*, the Court addressed this procedural question as follows:

> We now turn to Beilfuss'[s] argument that section 12 is unenforceable. Section 12 embodies both a choice of law clause and a choice of forum clause and presents us with the classic conundrum: "Which came first, the chicken or the egg?" Should we construe each clause separately and, if so, in what order? Or, should we construe the clauses together? [*Id.* at 506.]

Citing supportive California and Wisconsin caselaw, the *Beilfuss* Court concluded that it made sense to examine the validity of the parties' choice-of-law provision as "a precondition to determining the enforceability of the forum selection provision," because "important public policy considerations" may "trump a choice of law provision selecting a foreign jurisdiction's law as controlling." *Id.* at 507-508.[3]

---

[2] A law review article discusses the differing approaches in considerable detail. See Bufford, *Threshold or Procedural Issue: The Order of Interpretation Required By Contractual Choice-of-Law Provisions Versus The Law of the Forum Where the Suit Is Commenced*, 40 Am J Trial Advoc 131 (2016).

[3] As an example of an alternate approach, see *Hope's Windows, Inc v McClain*, 394 SW3d 478, 483-484 (Mo Ct App, 2013). In that case, the Missouri Court of Appeals reasoned that when a party consents to a forum-selection clause, she has inherently agreed that the chosen forum is convenient. "Where the enforceability of a forum-selection clause is at issue, the proper approach for a court to take is to enforce the clause specifically, unless the challenging party can clearly show that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching." *Id.* at 484 (cleaned up). The court declared that "where, as here, the case turns on the enforcement of a forum-selection clause, and the contract includes a choice-of-law provision, the law chosen by the parties controls the interpretation of the forum-selection clause." *Id.* at 482 n 3.

This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

In *Chrysler Corp v Skyline Indus Servs, Inc*, 448 Mich 113; 528 NW2d 698 (1995), the Michigan Supreme Court established the framework that guides our choice-of-law analysis. The Court adopted the approach laid out in the Restatement Conflicts of Law, 2d, §§ 187-188, pp 561, 575, holding that a contractual choice-of-law provision will not be followed if (1) " 'the chosen state has no substantial relationship to the parties or the transaction and there is no . . . reasonable basis' " for choosing that state's law, or (2) the application of the chosen state's law " 'would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue' " and which " 'would be the state of the applicable law in the absence of [a] choice of law by the parties.' " *Chrysler Corp*, 448 Mich at 120-123, quoting 1 Restatement Conflict of Laws, 2d, § 187(2)(a), (b), p 561; see also *Hudson v Mathers*, 283 Mich App 91, 97; 770 NW2d 883 (2009) ("Also, the chosen state's law will not be applied when it would be contrary to the fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue and whose law would be applicable in the absence of an effective choice of law by the parties.").[4]

Section 187(2)(b) of the Restatement posits that a contract's choice-of-law provision should not be honored if doing so "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Application of this subsection of the Restatement dictates that Louisiana law applies.

---

[4] 1 Restatement Conflict of Laws, 2d, § 187, p 561 provides as follows:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Michigan law conflicts with two fundamental policies of Louisiana employment law. In Michigan, choice-of-law and forum-selection clauses are generally enforceable. See *Turcheck*, 272 Mich App at 345. A Louisiana statute invalidates choice-of-law and choice-of-forum provisions in employment contracts with a narrow exception. Choice-of-forum and choice-of-law provisions are deemed "null and void" unless they are "expressly, knowingly, and voluntarily agreed to *and ratified by the employee after the occurrence of the incident* which is the subject of the civil or administrative action." La Rev Stat § 23:921(A)(2) (emphasis added). Nothing in the record provided suggests that Singletary ratified the choice-of-law or choice-of-forum provisions after the alleged breach of the employment agreement.

The Restatement's commentary offers guidance regarding whether a state's policy should be deemed "fundamental:"

> No detailed statement can be made of the situations where a "fundamental" policy of the state of the otherwise applicable law will be found to exist. *An important consideration is the extent to which the significant contacts are grouped in this state. For the forum will be more inclined to defer to the policy of a state which is closely related to the contract and the parties than to the policy of a state where few contacts are grouped but which, because of the wide dispersion of contacts among several states, would be the state of the applicable law if effect were to be denied the choice-of-law provision.* Another important consideration is the extent to which the significant contacts are grouped in the state of the chosen law. The more closely this state is related to the contract and to the parties, the more likely it is that the choice-of-law provision will be given effect. The more closely the state of the chosen law is related to the contract and the parties, the more fundamental must be the policy of the state of the otherwise applicable law to justify denying effect to the choice-of-law provision. [1 Restatement Conflict of Laws, 2d § 187, comment g, p 568 (emphasis added).]

As an example of a "fundamental" policy, comment g proposes "a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." *Id.*

There can be no doubt but that the "significant contacts" in this case are grouped in Louisiana. The contract itself relates to health care performed in Louisiana facilities by a Louisiana physician on behalf of a Louisiana professional corporation. The concentration of Louisiana contacts, combined with the special Louisiana policies governing employment contracts, tilt the scale in favor of Louisiana law.

The Louisiana Supreme Court has described La Rev Stat § 23:921A(2) as "an expression of strong Louisiana public policy concerning forum selection clauses." *Sawicki v K/S Stavanger Prince*, 802 So 2d 598, 603 (La, 2001). Similarly, the Louisiana Court of Appeals indicated that "[t]he provisions of [La Rev Stat §] 23:921(A)(2) prohibit choice of law clauses in an employee's employment contracts or agreements. Thus, the choice of Pennsylvania law clause in the O'Hara NCND Agreement is null and void and contravenes the public policy of this state." *O'Hara v Globus Med, Inc*, 181 So 3d 69, 81 (La Ct App, 2015). By curtailing an employer's ability to unilaterally dictate the law governing a contract and the forum for resolution of

-6-

disputes, La Rev Stat § 23:921A(2) also furthers Louisiana's interest in protecting Louisiana employees against overreaching by the party with superior bargaining power. These interests must be weighed against Michigan's interest in providing a forum for this employment dispute.

In *Chrysler Corp*, 448 Mich at 127-128, the Supreme Court provided further guidance applicable to the "materially greater interest" evaluation. The "place of performance" of the contract supplies one factor to be considered, but is not necessarily controlling. *Id*. In *Chrysler Corp*, the parties' dispute centered on an indemnification provision in a construction contract that would be void under Illinois law, but valid under a Michigan statute. *Id*. at 116. The work performed under the contract took place in Illinois, but the place of performance of the indemnification provision at issue was "unclear." *Id*. at 128. Thus, the fact that Illinois was the location of the work was not determinative of which state had a "materially greater interest," contrary to this Court's view. *Id*. at 127. Rather, the Supreme Court also considered that

> Michigan has a substantial relationship to the parties and the transaction at issue here. Both companies have significant contacts with this state, as Chrysler's principal place of business and Skyline's place of incorporation. Michigan was both the place of negotiation and the place of contracting. The parties had good reason to choose Michigan law for the contract. [*Id*. at 126-127.]

Here, the parties' contacts with Michigan are far more attenuated than they were in *Chrysler Corp*. Michigan has no discernable interest in the resolution of this employment dispute. Singletary is a Louisiana resident who performed (or failed to perform) all pertinent aspects of his employment contract in Louisiana. GMLP is "a Louisiana professional service corporation." Although GMLP's parent corporation's *business* operations are conducted in Michigan, the case involves Singletary's physical or mental ability to perform his duties as a physician, whether he violated a provision of a contract he signed in Louisiana, and whether GMLP owes him for lost wages (a question that will be litigated in Louisiana regardless of this Court's decision).[5] Any business or commercial concerns are secondary to the employment dispute.

The only link to Michigan is that GMLP's parent company is incorporated here, and maintains records related to Singletary's employment. GMLP has failed to identify any specific policy or interest on Michigan's part that might outweigh Louisiana's policies or interests. By prohibiting choice-of-law and forum-selection clauses, Louisiana public policy mandates Louisiana law will generally govern employment disputes involving Louisiana employers and employees. Manifestly, Louisiana has a materially greater interest than Michigan in deciding the outcome of this employment dispute.

Pursuant to Restatement § 187(2)(b), our next task is to consider whether "under the rule of § 188, [Louisiana] would be the state of the applicable law in the absence of an effective choice of law by the parties." Section 188 states:

---

[5] Singletary averred in an affidavit filed in the circuit court, "Prior to being sued in this case, I have never been to the State of Michigan."

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199, 203. [1 Restatement Conflict of Laws, 2d, § 188, p 575.]

Virtually all of these relationship factors favor Louisiana. Singletary, a Louisiana resident, signed the contract in Louisiana and was expected to perform it there. The company for which Singletary worked is incorporated in Louisiana. Presumably the contract was negotiated by email or telephone, rendering (b) inconsequential. Michigan is the location of GMLP's parent company, but under § 188, that factor bears little if any importance. In the absence of the choice-of-law provision in the parties' contract, § 188 counsels that Louisiana law applies, as Louisiana has the most significant relationships to the parties, the subject of the contract, and the substance of the dispute.

As Louisiana law governs the parties' agreement, the contract's choice-of-law and forum-selection clauses are void.

### III. FORUM NON CONVENIENS

Absent contractual reasons to pursue suit in Michigan, we must next consider whether GMLP's suit should have been dismissed based on the impropriety of the venue or inconvenience of the forum. We briefly note that Singletary's challenge to the court's denial of his motion to dismiss based on venue lacks merit. Singletary tardily raised his venue challenge in the circuit court, precluding that court's consideration. See MCR 2.221. This is not determinative of this appeal, however, as the circuit court should have dismissed GMLP's suit on forum non conveniens grounds.

-8-

"This Court reviews a trial court's decision to grant or deny a motion to dismiss a case on the basis of the doctrine of forum non conveniens for an abuse of discretion. An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006) (cleaned up). In exercising this discretion, the circuit court should consider the public and private interest factors adopted by our Supreme Court in *Cray*, 389 Mich at 396. A court abuses its discretion if it bases its ruling on "a clearly erroneous assessment of the evidence." *Cooter & Gell v Hartmarx Corp*, 496 US 384, 405; 110 S Ct 2447; 110 L Ed 2d 359 (1990).

The factors delineated in *Cray* supply a useful "framework for evaluating whether Michigan is a reasonably convenient place for a trial in each particular case, for the convenience of the parties is the underlying goal of both the statute and the common-law doctrine." *Lease Acceptance Corp v Adams*, 272 Mich App 209, 228; 724 NW2d 724 (2006). The private interests of the parties and the public interests of the alternative forums animate the factors, set forth here:

  1.    The private interest of the litigant.

  a.    Availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses;

  b.    Ease of access to sources of proof;

  c.    Distance from the situs of the accident or incident which gave rise to the litigation;

  d.    Enforcibility [sic] of any judgment obtained;

  e.    Possible harassment of either party;

  f.    Other practical problems which contribute to the ease, expense and expedition of the trial;

  g.    Possibility of viewing the premises.

  2.    Matters of public interest.

  a.    Administrative difficulties which may arise in an area which may not be present in the area of origin;

  b.    Consideration of the state law which must govern the case;

  c.    People who are concerned by the proceeding.

  3.    Reasonable promptness in raising the plea of *forum non conveniens*. [*Cray*, 389 Mich at 396.]

When analyzing case facts in light of the *Cray* factors, a court must bear in mind that a plaintiff's chosen forum "is ordinarily accorded deference." *Anderson v Great Lakes Dredge & Dock Co*, 411 Mich 619, 628-629; 309 NW2d 539 (1981). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp v Gilbert*, 330 US 501, 508; 67 S Ct 839; 91 L Ed 1055 (1947). However, a foreign plaintiff's forum choice is entitled to less deference than would apply to a domestic plaintiff's selected forum. *Radeljak*, 475 Mich at 612-614.

*Cray*'s subfactor 1(a) addresses the "[a]vailability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses." Singletary's witness list identifies 16 Louisiana witnesses in addition to himself. GMLP's witness list names 12 witnesses, but does not designate their locations. The circuit court analyzed this subfactor by observing that "the parties can utilize de bene esse depositions or video conferencing for witnesses who are Louisiana residents to eliminate the need for live, in-person testimony." While the circuit court's statement is undoubtedly true, it would be less costly to avoid these options. Furthermore, this factor focuses on the "availability of compulsory process for attendance of *unwilling*" witnesses, a subject that the circuit court did not address. Singletary would not have access to compulsory process for unwilling Louisiana witnesses were this case tried in Michigan. Accordingly, this factor weighs in his favor.

Subfactor 1(b) involves the "ease of access to sources of proof." The circuit court pointed out that GMLP's employee records are located in Michigan, apparently finding that this fact weighs in favor of Michigan. The records are readily portable; likely they are electronic. Given that Singletary admits to having signed the contract and does not contest the date he stopped working, the employment records are likely to be insubstantial. On the other hand, Singletary's medical records are in Louisiana. Singletary's defense rests on his claim of disability, which in turn is documented (or not) only in Louisiana. It appears that access to *relevant* proofs would be easier in Louisiana.

Under subfactor 1(c), a court considers the distance from the site of an accident or the incident that gives rise to the litigation. This factor is not relevant. Subfactor 1(d) concerns the enforceability of any judgment obtained. Again, this factor has no relevance; a judgment against either party is likely enforceable in either state. Subfactor 1(e), "possible harassment of either party," is likewise inapplicable, as is (g), "possibility of viewing the premises." Subfactor 1(f) involves "other practical problems which contribute to the ease, expense and expedition of the trial." The circuit court did not address this subfactor directly. Rather, with regard to it and *Cray*'s public interest factors, the court generally opined:

> The Court is mindful of the fact that the parties' Employment Agreement includes Choice of Forum and Governing Law provisions that identify Michigan, not Louisiana, as the selected state for the enforcement of the Agreement and any future litigation. As stated earlier, "[i]t is undisputed that Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions." *Turcheck*, [272 Mich App] at 345.

> Although Defendant asserts that jurisdiction in Louisiana would be more convenient for the reason that both parties are located there, the question is not

whether Louisiana is a more convenient forum or Michigan would be less convenient. Rather, it is sufficient that Michigan is a reasonably convenient forum. MCL 600.745(2); *Lease Acceptance*, [272 Mich App] at 222-223. "What is meant by 'reasonably convenient' is not clear, because that phrase is not defined in the statute. Hence, we turn to the dictionary. [. . .] [*Random House Webster's Unabridged Dictionary*] (1998) defines 'reasonable' as 'agreeable to reason or sound judgment; logical[.]' The term 'convenient' means 'suitable or agreeable to the needs or purpose; well-suited with respect to facility or ease in use; favorable, easy, or comfortable for use.' *Id*. Accordingly, a determination of what is a 'reasonably convenient' place for trial requires a determination whether Michigan is a logical venue that is well-suited for the purpose of deciding this action." *Lease Acceptance*, [272 Mich App] at 225-226. Although Michigan may not be the most convenient forum to try this action, it is a reasonably convenient forum.

The circuit court's reliance on *Lease Acceptance Corp*, 272 Mich App at 228, is somewhat misplaced, as in that case the trial court failed to address the relevant *Cray* factors in its evaluation of personal jurisdiction under MCL 600.745(2)(b) (which is not at issue here), and this Court remanded to permit the circuit court to employ a *Cray* analysis. The relevant "public interest" factors delineated in *Cray* favor Singletary. Subfactor 2(b) concerns the law that applies to the case. Given that Louisiana law applies, this factor supports that Michigan would be an inconvenient location for the trial. Further, Michigan has no discernable interest in the outcome of this case. Similarly, under subfactor 2(c), it is unlikely that there are any people in Michigan who might be "concerned" about the proceedings, other than a representative of GMLP.

Although Singletary did not file his forum non conveniens motion with his answer, he did not need to. See *Dayton Mall Motor Inn v Honeywell, Inc*, 132 Mich App 174, 179; 347 NW2d 15 (1984) ("The court rules governing changes of venue cannot reasonably be understood to apply to dismissals based on forum non conveniens. We conclude that the court rules governing changes of venue do not apply to dismissals based on forum non conveniens."). Rather, the standard is "reasonable promptness" in raising the issue. *Cray*, 389 Mich at 396. The circuit court did not find that Singletary delayed in bringing his forum non conveniens motion, and GMLP has not raised an argument that he did.

Because the majority of *Cray*'s relevant private and public interest factors strongly indicate that trial in Michigan would not be reasonably convenient, the circuit court abused its discretion by holding otherwise.

We reverse and remand for entry of summary disposition in Singletary's favor. We do

not retain jurisdiction.  Singletary, as the prevailing party, may tax costs pursuant to MCR 7.219(A).


/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien