RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0273P (6th Cir.)
File Name: 02a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MILL'S PRIDE, INC., a
Connecticut Corporation, and
MILL'S PRIDE LIMITED
PARTNERSHIP,
      *Plaintiffs-Appellees,*

      *v.*

CONTINENTAL INSURANCE
COMPANY,
      *Defendant-Appellant.*

No. 00-2511

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00758—David W. McKeague, District Judge.

Argued: June 13, 2002

Decided and Filed: August 13, 2002

Before: SILER and MOORE, Circuit Judges; STAFFORD,
District Judge.

_____

*The Honorable Willliam Stafford, United States District Judge for
the Northern District of Florida, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Thomas Joe Keener, KEENER, DOUCHER, CURLEY, PATTERSON, Columbus, Ohio, for Appellant. Robert L. DeJong, MILLER, CANFIELD, PADDOCK & STONE, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Thomas Joe Keener, KEENER, DOUCHER, CURLEY, PATTERSON, Columbus, Ohio, for Appellant. Robert L. DeJong, MILLER, CANFIELD, PADDOCK & STONE, Grand Rapids, Michigan, for Appellees.

_____

**OPINION**

_____

STAFFORD, District Judge. Appellant appeals the district court's ruling that Michigan law governs this diversity contract action. We reverse.

### I. BACKGROUND

Mill's Pride, Inc., and Mill's Pride Limited Partnership are involved in the purchase, manufacture, and wholesale selling of furniture throughout the continental United States. Mill's Pride, Inc., is a Connecticut corporation with its principal place of business in West Palm Beach, Florida. Mill's Pride Limited Partnership is an Ohio limited partnership in which Mill's Pride, Inc., is a general partner. Like Mill's Pride, Inc., the partnership maintains its administrative offices in West Palm Beach. The partnership also owns and operates a manufacturing facility--its only manufacturing facililty--in Waverly, Ohio, where it manufactures furniture that is distributed nationally. Mill's Pride, Inc., does not manufacture furniture but is involved in the distribution of the furniture manufactured by the partnership.

## V.  CONCLUSION

Having concluded that the contacts and policy goals delineated in sections 188 and 6 of the Second Restatement favor application of Ohio law given the facts and circumstances presented here, we REVERSE the district court's decision to apply Michigan law.  The district court's Stipulated Final Order is accordingly VACATED, and the case is REMANDED to the district court for proceedings and/or entry of judgment consistent with this opinion.

On September 1, 1995, Continental Insurance Company ("Continental")--whose home office is located in Chicago, Illinois--issued Mill's Pride, Inc., a commercial general liability policy ("CGL Policy") covering the period between September 1, 1995, and August 31, 1996.  Mill's Pride Limited Partnership was a named insured under the CGL Policy.  The policy did not include a choice of law clause.

The negotiations leading to issuance of the CGL Policy were conducted by James F. Arpe, treasurer for Mill's Pride, Inc.; Bill Failor, Senior Account Representative for Johnson & Higgins, an insurance agency in Cleveland, Ohio, that placed the coverage; and Sandra Billow, a broker for Johnson & Higgins.  While some of the negotiations were conducted in West Palm Beach where Arpe had his offices, most of the meetings were conducted in Waverly, Ohio, at the partnership's manufacturing facility.  The parties apparently understood that any claims arising under the policy were to be reported to the insurance agency in Cleveland, Ohio, then transferred to Continental's claims office in Columbus, Ohio, for investigation and handling.   Joint Appendix ("J.A.") at 40-41, 132.

The underlying lawsuit that gave rise to the dispute in this litigation was brought by Ameriwood Industries International Corporation ("Ameriwood") against Mill's Pride, Inc., and Mill's Pride Limited Partnership in the United States District Court for the Western District of Michigan.  As alleged in its complaint, Ameriwood was the owner of the trademark KIDS 'N' KOLOR, a line of ready-to-assemble children's furniture sold with a distinctive, non-functional trade dress.   In late 1995, Ameriwood discovered that furniture identical in appearance to its KIDS 'N' KOLOR line was being sold in Michigan and Illinois under the trademark KIDZ COLORZ. KIDZ COLORZ was manufactured by Mill's Pride Limited Partnership and sold by Mill's Pride, Inc., in a trade dress substantially identical to Ameriwood's distinctive trade dress. Ameriwood sought damages from Mill's Pride, Inc., and Mill's Pride Limited Partnership for false designation of

origin, trademark infringement, trade dress infringement, unfair competition, and dilution of trademark and trade dress. The parties ultimately settled the suit at an April 30, 1996, facilitative mediation scheduled by the Michigan district court.

On October 23, 1998, Mill's Pride, Inc., and Mill's Pride Limited Partnership (collectively "Plaintiffs") brought this diversity suit alleging that Continental breached the CGL Policy by refusing to pay defense and indemnification costs associated with the Ameriwood lawsuit. Plaintiffs sought both a declaration as to their right to recover the cost of attorneys' fees and litigation expenses incurred in defending the Ameriwood lawsuit as well as a declaration regarding their right to obtain reimbursement of the sum they paid in settlement of the underlying suit. Continental argued that it was not obligated to pay Plaintiffs' defense and indemnification costs because Plaintiffs failed to comply with the terms and conditions of the CGL Policy--namely, the provision requiring Plaintiffs to cooperate with and to get consent to settle from Continental. According to Continental, Plaintiffs not only failed to notify Continental about, and permit Continental to participate in, the mediation scheduled by the *Ameriwood* trial court, but they also ultimately settled the case without Continental's consent or approval.

It became apparent during the course of this litigation in the district court that a decision as to which state's law should be applied would be outcome determinative. As explained by counsel for Mill's Pride, Inc., at a hearing before the district court:

> [T]here is authority under Ohio law that if you fail to make the notification, you're just out. Too bad, you get no claim. They treat it as a condition precedent to coverage....The Michigan law, on the other hand,...says, well, we're going to consider that as a factor, but really

Plaintiffs should expect different results from state to state when they fail to perform their duties to Continental.

On the other hand, we think both Continental and Plaintiffs had sound reason to expect a uniform and consistent interpretation of the policy language setting out Plaintiffs' duties in the event of an occurrence. With uniformity of interpretation, Continental and Plaintiffs alike would be able to foretell with accuracy their rights and responsibilities under the contract. Moreover, if the situation were reversed, and Ohio had been the place of infringement and Michigan the place of contract negotiation, we are confident that Plaintiffs would not be urging us to apply the law of the state where the injury occurred but, instead, would be arguing for application of the more predictable *lex loci contractus* rule. To be sure, Plaintiffs might fortuitously benefit from application of the law of the state where the injury occurred in this instance, but we cannot agree that Plaintiffs had a reasonable expectation to such benefit. To the contrary, Continental was entitled to expect, and Plaintiffs should have expected, a uniform interpretation of the language regarding Plaintiffs' duties to Continental.

In sum, given the circumstances as they relate to the issue before us, we conclude that the appropriate choice of law in this case is the law of Ohio. Where, as here, the issue is an insured's duty to provide notice to, cooperate with, and obtain consent to settle from, its insurer, the goals of "certainty, predictabililty and uniformity of result" and "the protection of justified expectations" are furthered by the application of one state's law to matters of contract interpretation. Restatement (Second) of Conflict of Laws § 6(2)(d) & (f). This, in turn, produces one rule of nation-wide effect. Because the parties' contract was largely negotiated in Ohio, because claims under the contract were to be reported, investigated, and handled in Ohio, and because Plaintiffs' product was manufactured in Ohio, the contacts listed in section 188(2) point to Ohio as the one state whose laws should govern the issue here presented.

balance principles, policies, factors, weights, and emphases to reach a result, the derivation of which, in all honesty, does not proceed with mathematical precision.

*Int'l Ins.*, 86 F.3d at 606.

Moreover, contrary to the suggestion of Plaintiffs, the *International Insurance* court did not ignore the parties' state contacts while it, instead, focused on the protection of the parties' justified expectations. The court merely declined to address each contact in its opinion because the district judge, in a published opinion, parsed each of the contacts item-by-item, finding that "some factors favored the application of Ohio law but that, taken as a whole, the balance was in favor of applying Louisiana law." *Int'l Ins.*, 86 F.3d at 606. Like the district court, but without discussion, the circuit court concluded that the balance of contacts favored application of Louisiana law, the same law that best protected the parties' justified expectations.

Also contrary to the suggestion of Plaintiffs, the circumstances in this case are not the same as those in *International Insurance*. Here, we are not concerned--as was the court in *International Insurance*--with an insured's expectation of coverage for "whatever a state allow[s] by way of recovery to a tort plaintiff." *Int'l Ins.*, 86 F.3d at 607. Instead, we are concerned with policy language that spells out Plaintiffs' duties to Continental in the event of an occurrence or suit. Furthermore, unlike the plaintiff in *International Insurance*, Plaintiffs in this case are urging us to apply the law of a state that, with respect to the issue before us, is not favored by any of the contacts listed in section 188(2). Moreover, while the policy language and circumstances in *International Insurance* revealed good reason why the parties might expect coverage to vary from state to state, Plaintiffs here have not articulated, nor can we imagine, any good reason why they should expect their duties to Continental to vary from state to state depending upon the location of an occurrence. Similarly, we can discern no good reason why

it's going to be up to the insurance company to show that they were prejudiced by the lack of timely notice.

J.A. at 112.

Applying Michigan's choice of law rules and relying on *International Insurance Co. v. Stonewall Insurance Co.*, 86 F.3d 601 (6th Cir. 1996), the district court ruled that the substantive law of Michigan governed the parties' dispute. The parties thereafter entered into a "Partial Settlement Agreement" that resolved all factual and legal disputes except for the single legal issue regarding the appropriate choice of law. The district court soon after entered a "Stipulated Final Order" preserving the choice of law issue for appeal and stating that the order "constitutes a final order adjudicating the rights and obligations of the parties." J.A. at 43. Plaintiffs' timely appeal of the choice of law issue is now before this court.

## II. STANDARD OF REVIEW

The district court's ruling on the choice of law issue is reviewed *de novo*. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S. Ct. 1217, 1218-1221, 113 L. Ed. 2d 190 (1991); *Charash v. Oberlin College*, 14 F.3d 291, 296 (6th Cir. 1994).

## III. CHOICE OF LAW RULES

It is well-established that, in a diversity case such as this one, a federal court must apply the substantive law of the state in which the court sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938). This rule extends to the forum state's law regarding choice of laws. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941). Because this action was brought in federal court in Michigan, Michigan's choice of law rules apply.

The Michigan Supreme Court most recently addressed the state's choice of law rules in contract disputes in *Chrysler Corporation v. Skyline Industrial Services, Inc.*, 448 Mich. 113, 528 N.W.2d 698 (1995).   In that case, Chrysler Corporation, a Delaware corporation with its principal place of business in Michigan, and Skyline Industrial Services, Inc. ("Skyline"), a Michigan corporation, entered into a contract for construction services to be performed by Skyline in Illinois.   Negotiated mainly in Michigan, the contract provided that Skyline would indemnify and hold Chrysler harmless from Chrysler's negligence.   Such an indemnification provision in a construction contract was void under Illinois law but was valid under Michigan law unless the indemnitee was solely negligent.

After a Skyline employee was injured while working at an Illinois construction site, Chrysler commenced an action in Michigan seeking a declaratory judgment that Skyline was liable under the indemnification clause.   The trial court found that applying Michigan law would best give effect to the parties' intentions at the time of contracting.   Analyzing the choice of law issue under the Restatement (Second) of Conflict of Laws ("Second Restatement"), an appellate court reversed, concluding that the law of Illinois should apply because Illinois was both the place of performance and the location of the subject matter of the contract.   While rejecting the conclusion of the appellate court, finding instead that Michigan law applied, the supreme court endorsed the appellate court's reliance on the Second Restatement, stating:

> The trend in this Court has been to move away from traditional choice-of-law conceptions toward a more policy-centered approach....
>
>      ....
>
> ...[Sections] 187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states, provide a sound

the law of the location of the occurrence governs the insurance contract with regard to that occurrence.

Pls.' Br. at 8-9.

Plaintiffs, however, have misinterpreted the law of this circuit.   To be sure, in *International Insurance*, the court concluded that "the most significant factor to be considered under the facts presented here, is found in section 6(2)(d), the protection of justified expectations." *Int'l Ins.*, 86 F.3d at 606.   The court's conclusion, however,  was driven by the issue and the facts presented in that case.   Where the issue involved coverage for amounts recovered by a tort plaintiff, the *International Insurance* court determined that the reasonable expectations of both an insured and an insurer would be that, whatever a state allowed by way of recovery to a tort plaintiff, it would be covered by insurance. Importantly, the court's conclusion in *International Insurance* was bolstered by language in the policy expressly providing that the insurer would pay the ultimate net loss imposed upon the insured by law. *Int'l Ins.*, 86 F.3d at 605.   The *International Insurance* court did not suggest that, in an insurance dispute involving a different issue and different facts, a court should focus on the protection of justified expectations to the exclusion of the other policy goals set out in section 6 or to the exclusion of the state contacts listed in section 188(2).

Nor did the court endorse--as Plaintiffs suggest--an inflexible law-of-the-location-of-the-occurrence rule for insurance contracts.   Indeed, the court did quite the opposite, repeatedly emphasizing that choice of law principles are elastic and that '[r]esolving a choice of law issue is not an exact science, but an art form." *Int'l Ins.*, 86 F.3d at 608.   In the court's words:

> [E]ven when sections 6 and 188 are read together, it is clear they only provide a broad general framework for the resolution of choice of law issues in the context of a contract dispute.   Within that framework, a judge must

contacts--the place of negotiation, the place of performance (at least with respect to the issue of Plaintiffs' duties to Continental), and the place of business of the parties--point to the State of Ohio. Whether the remaining two contacts--the place of contracting and the location of the contract's subject matter--point to Ohio or to some other state is less certain.

In contrast, none of the factors points to the State of Michigan. Indeed, the only thing that ties this case to Michigan is an underlying tort case that was filed in Michigan and that has already been settled to the Michigan plaintiff's satisfaction. The issue that now remains not only involves no one from Michigan, but resolution of the issue will also have no impact on anyone from Michigan. The parties' insurance policy was not negotiated in Michigan; it was not executed in Michigan; it makes no mention of Michigan law; it covers no insured that is incorporated in Michigan or that has a place of business in Michigan; and it obligates no company with Michigan ties.

Plaintiffs suggest that we should resolve the choice of law issue by ignoring the parties' state contacts while turning, instead, to the policy goals listed in section 6 of the Second Restatement. Of the seven policy goals listed, Plaintiffs would have us focus on only one, the protection of justified expectations, the policy goal found to be most significant by the Sixth Circuit in *International Insurance*. In the words of Plaintiffs' counsel:

Restatement § 188 does not require that the Court account for every possible interest or contact....In the context of insurance contracts, the Sixth Circuit focuses upon the justified expectations of the parties....

Given the nature of insurance coverage for national companies, the Sixth Circuit has concluded that, in circumstances such as those found in this case, the reasonable expectation of the contracting parties is that

basis for moving beyond formalism to an approach more in line with modern-day contracting realities....

...As the comments to § 187 of the Second Restatement state: "Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." But, "[f]ulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation."

*Chrysler*, 528 N.W.2d at 702-703 (footnotes omitted). Guided by the concerns for certainty and public policy expressed in the Second Restatement, the supreme court balanced the relevant interests, concluding:

This lawsuit concerns two Michigan corporations, with a longstanding business relationship, who contracted in Michigan and chose Michigan law to govern their contractual relationship. Both parties apparently acted as if Michigan law would apply. We decline to void the parties' express preference for Michigan law in the absence of compelling evidence that Illinois has a materially greater interest than Michigan.

*Chrysler*, 528 N.W.2d at 707 (footnote omitted).

While adopting the Second Restatement approach to choice of law questions in *Chrysler*, the Supreme Court of Michigan explicitly stated that it declined to abandon what had long been the predominant view in Michigan: namely, the *lex loci contractus* rule that a contract is to be construed according to the law of the place where the contract was entered into. Rather, the court said: "[I]t is important to clarify that that [*lex loci contractus*] rule may prove to be unworkable under certain factual situations, such as those presented here, which demand a more extensive review of the relative interests of the parties and the interested states." *Chrysler*, 528 S.W.2d at 703 n.28.

Citing *Chrysler*, the Sixth Circuit has said that "Michigan choice of law rules...require a court to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply." *Equitable Life Assurance Soc'y of the United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). Such a balancing approach is consistent with the Second Restatement approach endorsed by the Supreme Court of Michigan in *Chrysler*.

Section 188 of the Second Restatement provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and parties under the principles stated in s 6.

(2) In the absence of an effective choice of law by the parties..., the contacts to be taken into account in applying the principles of s 6 to determine the law applicable to an issue include:

   (a) the place of contracting,
   (b) the place of negotiation of the contract,
   (c) the place of performance,
   (d) the location of the subject matter of the contract, and
   (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188.

Underlying the factors set out in section 188 are the general policy considerations found in section 6:

timely notice of claims to Continental, (2) to immediately send Continental copies of any legal papers received in connection with a claim, (3) to cooperate with Continental in the investigation, settlement or defense of any claims or suits against Plaintiffs, and (4) to obtain consent from Continental before voluntarily making a payment or assuming any obligation related to a claim. J.A. at 20-20$^{-A}$. Such language was knowingly and intentionally included in the parties' insurance contract, a contract negotiated at arms-length primarily in Ohio where, according to the parties, performance of an insured's duties to its insurer is treated as a condition precedent to coverage under the policy.[1]

Not only was the contract largely negotiated in Ohio by parties with important ties to Ohio, the parties understood that claims under the policy were to be reported to a claims consultant with Johnson & Higgins in Cleveland, Ohio, then transferred to Continental's claims office in Columbus, Ohio, for investigation and handling. Plaintiffs were thus required to perform their duties to Continental in Ohio; and if, as alleged, Plaintiffs failed to perform those duties, they failed to perform those duties in Ohio.

Section 188(1) of the Second Restatement provides that "[t]he rights and duties of the parties *with respect to an issue in contract* are determined by the local law of the state which, *with respect to that issue*, has the most significant relationship to the transaction and parties under the principles stated in s 6." Restatement (Second) of Conflict of Laws § 188(1) (emphasis added). When, as here, the parties have not specified which state's law should govern a contract, the Second Restatement directs a court to consider five contacts in deciding which state has the most significant relationship to the transaction and parties. Restatement (Second) of Conflict of Laws § 188(2). In this case, three of those

---

[1] For purposes of this lawsuit, we accept the parties' representations about the effect given to an insurance policy's notice requirements under Ohio law. We do not decide whether those representations are correct.

We are confident that the reasonable expectations of an insured, such as Crown, would be that, whatever a state allowed by way of recovery to a tort plaintiff, it would be covered by its insurance. Nor do we see this as a one-sided equation....Under facts such as are presented here, an insurance carrier cannot reasonably expect that an insured would want some type of fluctuating coverage which would afford full protection in one locale, but not in another.

*International Insurance*, 86 F.3d at 607.

The court in *International Insurance* did not say or in any way suggest that, in the absence of a choice of law provision in the contract of insurance, the law of the place of injury would always govern matters of insurance policy interpretation. Indeed, in *International Insurance*, the court approved the decision reached in *Revco D.S., Inc. v. Government Employees Insurance Co.*, 791 F. Supp. 1254 (N.D. Ohio 1991), *aff'd*, 984 F.2d 154 (6th Cir. 1992), wherein the court concluded that, under the facts and circumstances there presented, the state law where the underlying injury occurred had a less significant interest in the controversy than did the place of incorporation and place of business of the insured. *Int'l Ins.*, 86 F.3d at 608 (noting that "[f]or what it is worth, we believe that the correct result was reached in...Revco"). That the results in *Revco* and *International Insurance* appear on the surface to be inconsistent simply emphasizes what the Sixth Circuit has said: that each choice of law controversy "has to be analyzed within its own factual context" and "the result is heavily fact driven." *Int'l Ins.*, 86 F.3d at 608.

Unlike the dispute in *International Insurance*, which involved a question of coverage for an insured's liability to a tort plaintiff, the dispute in this case involves the effect to be given policy language that sets out an insured's duties to its insurer in the event of an occurrence. Specifically, the dispute involves policy language that requires Plaintiffs (1) to give

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law,
  (f) certainty, predictability and uniformity of result, and
  (g) ease in the determination and application of the law to be applied.

Restatement (Second) Conflict of Law § 6.

## IV.  DISCUSSION

Relying on *International Insurance Company v. Stonewall Insurance Company*, 86 F.3d 601 (6th Cir. 1996), the district court in this case determined that Michigan law applied to the dispute between Plaintiffs and Continental. According to the district court, "*International Insurance* teaches that the law of the location of the occurrence governs the insurance contract with regard to that occurrence unless the parties have agreed otherwise by contract." J.A. at 125-126. Because the parties did not include a choice of law provision in the CGL policy, and because the relevant occurrence allegedly took place--at least in part--in Michigan, the district court concluded that "Continental understood and Mill's Pride reasonably could have expected that the law...[of Michigan] would govern the contractual relationship between these parties." J.A. at 126.

Contrary to the district court's assertions, *International Insurance* does not teach that "the law of the location of the occurrence governs the insurance contract with regard to that occurrence unless the parties have agreed otherwise by contract." J.A. at 125-126. Indeed, the court in *International Insurance* espoused no such bright-line rule but, instead, warned that choice of law controversies are "fact driven and each case has to be analyzed within its own factual context." *Int'l Ins.*, 86 F.3d at 608.

*International Insurance* arose out of a Louisiana state court case filed by an individual injured by a defective forklift in Louisiana, where pre-judgment interest is assessed as a matter of right and where parties responsible for payment of judgment are also responsible for payment of pre-judgment interest. The party causing the injury, Crown Equipment Corporation ("Crown"), was an Ohio corporation that did business in Louisiana. A Louisiana jury awarded the injured plaintiff $4,282,808.26. To the jury's award, the state court added an award of pre-judgment interest, bringing the entire award to a total of over $7,100,000.00. Crown's insurer, International Insurance Company ("International"), thereafter filed suit in federal court in Ohio, seeking a declaration as to its obligation on the judgment in the underlying tort action. Urging the application of Ohio law, which provides that insurers are not liable for interest in excess of policy limits, International argued that, because the relevant insurance policy limited the company's liability to $5,000,000.00 per occurrence, its obligation on the judgment was limited to $5 million.

Relying on sections 6 and 188 of the Restatement, the district court in Ohio concluded that International's declaratory judgment action was governed by Louisiana law and not by Ohio law as argued by International. Because Louisiana law makes insurers liable for pre-judgment interest in excess of any policy limit, the district court declared that International was obligated to pay both the damage award as well as the pre-judgment interest on that award.

On appeal, this court affirmed, stating:

> The key to our analysis is that the choice of law principles found in the Restatement need not be given equal weight in every circumstance, nor are they intended to be exclusive. They also are relatively elastic, and in some cases equivocal....
>
> With these instructive comments in mind, we have concluded that the most significant factor to be considered under the facts presented here, is found in section 6(2)(d), the protection of justified expectations. Crown is a large national company whose products are sold and used throughout the United States....It is beyond peradventure that Crown wanted complete liability protection within the policy limits of the insurance it purchased.

*Int'l Ins.*, 86 F.3d at 606.

Among other things, the appellate court found significant the fact that the insurance policy required International to "pay on behalf of the insured, the ultimate net loss..., which the insured may sustain by reason of the liability imposed upon the insured by law." *Int'l Ins.*, 86 F.3d at 605. Moreover, the court noted that the parties included a clause in the policy stating that, "[i]n a jurisdiction where, by reason of law or statute, this policy is invalid as a 'pay on behalf of' contract, [International] agrees to indemnify the insured for ultimate net loss in excess of their retained limits." *Int'l Ins.*, 86 F.3d at 605. According to the court, these policy provisions revealed that the parties anticipated that the laws of various jurisdictions would affect International's performance under the contract, strengthening the court's conclusion that the parties' expectations, given the particular facts presented, were best preserved through application of Louisiana law.

Stressing the fact-driven nature of a choice of law question, the *International Insurance* court concluded: