RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

**16-1434**

STONE SURGICAL, LLC,

*Plaintiff-Appellant*,

*v.*

STRYKER CORPORATION; HOWMEDICA OSTEONICS CORPORATION,

*Defendants-Appellees*.

Nos. 16-1434/1654

**16-1654**

STRYKER CORPORATION; HOWMEDICA OSTEONICS CORPORATION,

*Plaintiffs-Appellees*,

*v.*

CHRISTOPHER RIDGEWAY,

*Defendant-Appellant*.

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 1:13-cv-01066; 1:14-cv-00889—Robert Holmes Bell, District Judge.

Argued: February 1, 2017

Decided and Filed: May 24, 2017

Before: GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Louis C. LaCour Jr., ADAMS AND REESE LLP, New Orleans, Louisiana, for Appellants Stone Surgical and Christopher Ridgeway. Michael D. Wexler, SEYFARTH SHAW LLP, Chicago, Illinois, for Appellees. **ON BRIEF:** Louis C. LaCour Jr., ADAMS AND

REESE LLP, New Orleans, Louisiana, for Appellants Stone Surgical and Christopher Ridgeway. Michael D. Wexler, Justin K. Beyer, Robyn E. Marsh, SEYFARTH SHAW LLP, Chicago, Illinois, David J. Gass, MILLER JOHNSON, Grand Rapids, Michigan, for Appellees.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.   This case arises out of the deterioration of a decade-plus employment relationship between Stryker Corporation and Christopher Ridgeway. Stryker, a medical-device manufacturing company, employed Ridgeway as a sales representative, where he sold customized plates and screws for use in craniomaxillofacial (CMF) surgery on Stryker's behalf in his Louisiana-based sales territories.   In 2013, however, the relationship between Stryker and Ridgeway became strained as Ridgeway sought other business opportunities with a regional competitor, Biomet.   Stryker terminated Ridgeway as a result. Litigation ensued, a jury trial was conducted in the Western District of Michigan, and judgment was awarded to Stryker.   At the core of the present dispute is a non-compete agreement Ridgeway signed at the start of his tenure with Stryker and whether that agreement is valid.   For the reasons that follow, the district court properly ruled for Stryker.

I.

Christopher Ridgeway was employed as a sales representative by Stryker Corporation and Howmedica Osteonics Corporation (collectively, "Stryker") from 2001 to 2013.   Stryker offered Ridgeway the sales representative position through a sixteen-page fax letter on October 24, 2001.   Ridgeway's employment was contingent on his signing and returning certain attached documents—an offer letter, a form non-compete agreement, and a code of conduct.   From 2000 to 2005, Stryker used the same form non-compete agreement with all employees, which included a one-year non-compete clause, a customer non-solicit clause, and an employee non-solicit clause.   The non-compete agreement included a Michigan choice-of-law clause and a Michigan forum-selection clause.   On October 25, 2001, Ridgeway accepted the job offer with a four-page fax containing a cover page, the signed offer letter, and executed signature pages for his form

non-compete agreement and code of conduct. The cover letter stated: "Here are signed copies of my offer letter, non-compete agreement, and code of conduct."

Once hired, Ridgeway was responsible for selling Stryker medical-device products to customers within his Louisiana-based sales territories. During this time, Ridgeway received products from Stryker at his home in Louisiana, delivered products to Louisiana doctors and hospitals, and conducted sales meetings with other employees in his Louisiana territories. Despite becoming one of Stryker's top performers, in 2013, Ridgeway began to consider working for a Stryker competitor, Biomet.[1]

At this point, Ridgeway's and Stryker's accounts of their business relationship diverge. Ridgeway says that he discussed on multiple occasions with Stryker management the fact that he did not have a non-compete agreement as part of his employment contract. Specifically, he alleges he asked Stryker's Human Resources director whether an agreement existed in his file, and the director told him it did not. Based on Stryker's assurances, Ridgeway began talking to Biomet about future employment opportunities.

Stryker contends that its management did not, at any time, represent to Ridgeway that he was not covered under a non-compete agreement. The conversation Ridgeway references with the Stryker Human Resources director, according to Stryker, concerned whether Ridgeway had to sign a new non-compete agreement to receive the stock options associated with his 2012 promotion to District Sales Manager. Stryker maintains that the director merely told Ridgeway that she did not see a *new* stock-option non-compete in his personnel file. The director followed up their conversation with an email titled "Stock" that allegedly detailed the same. The company states that all Stryker employees were required to sign the initial form non-compete or else they would not be hired, so it was impossible for Ridgeway to have worked for them without signing one.

When Stryker got wind that Ridgeway was considering working with Biomet, two Stryker representatives traveled to Louisiana and fired Ridgeway, effective immediately. At that September 10, 2013 meeting, Ridgeway was given a termination letter, which reminded him of

---

[1]Biomet was a co-defendant in this litigation, but is not currently a party to this appeal.

his obligation to protect confidential Stryker trade secrets. Following his termination, Ridgeway began working for Biomet within his former Stryker Louisiana-based sales territories.[2]

Stryker filed suit against Ridgeway in the Western District of Michigan, claiming breach of contract, breach of fiduciary duty, and misappropriation of trade secrets. Ridgeway moved to dismiss for lack of personal jurisdiction, which the district court denied based on the forum-selection clause in the non-compete agreement. Ridgeway also counterclaimed, alleging various counts including fraud under Louisiana law.

While the Michigan suit was pending, Ridgeway's company, Stone Surgical, filed suit against Stryker in the Eastern District of Louisiana. This action was transferred to the Michigan forum and consolidated with the first-filed Michigan action. Stryker moved for a preliminary injunction against Ridgeway, seeking to prevent him from continuing his Biomet employment until resolution of this litigation; the motion was denied but had the effect of ending Ridgeway's and Biomet's business relationship out of Biomet's fear of liability.

Leading up to trial, a dispute arose between Stryker and Ridgeway over the authenticity of the non-compete agreement attached as an exhibit to Stryker's initial complaint. When Stryker filed its complaint, it attached as an exhibit the company's form non-compete agreement as well as the signature page of Ridgeway's agreement, which contains the document control number 573287.03. Ridgeway contends that Stryker fabricated the document by attaching his signed page to a form non-compete agreement, rather than the original that accompanied his entire agreement. Stryker, on the other hand, contends that it never possessed a returned version of the entire agreement, but rather only the signature page, which was attached to the October 25, 2001 fax in which Ridgeway accepted his employment. The terms of all 132 form non-compete agreements with the same document control number as Ridgeway's were identical between 2000 and 2005. Prior to the close of discovery, it was determined that the non-compete attached to the initial complaint was indeed a form agreement matching the 132 others signed between 2000 and 2005.

---

[2]Ridgeway did this through his company, Stone Surgical, LLC, which is also a party to this appeal. As the parties, in their briefs, have used "Ridgeway" collectively to refer to appellants and do not delineate separate arguments, we do the same here.

In February 2016, the consolidated actions were tried in a ten-day jury trial. The jury returned a verdict in favor of Stryker on its breach-of-contract, breach-of-fiduciary-duty, and misappropriation-of-trade-secrets claims. The jury awarded damages in the amount of $745,195, and denied any relief to Ridgeway based on his counterclaims. Ridgeway and Stone Surgical now appeal.

## II.

Whether Ridgeway signed the non-compete agreement is not at issue on appeal. Ridgeway develops no argument that he did not sign the non-compete and only briefly mentions in his brief that he is not conceding that fact. As a result, Ridgeway has forfeited any challenge to the jury's verdict specifically finding that he signed the non-compete.

In any event, Ridgeway has already waived any challenge to the jury's verdict. "After an adverse jury verdict, a litigant must move for a new trial or for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure in order to preserve a sufficiency challenge for appeal." *Hubbard v. Detroit Pub. Schs.*, 372 F. App'x 631, 634 (6th Cir. 2010) (citation omitted). Ridgeway did not file a Rule 50(b) motion and therefore did not preserve the issue for appeal.[3]

## III.

We review *de novo* any decisions concerning choice-of-law and forum-selection clauses. *Newberry v. Silverman*, 789 F.3d 636, 643 (6th Cir. 2015); *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826 (6th Cir. 2009). We also review questions of personal jurisdiction *de novo*. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

Ridgeway mounts a variety of challenges on appeal—the forum-selection clause, the exercise of personal jurisdiction over him in Michigan, and the application of the choice of law clause. We address each of these in turn.

---

[3]We apply Rule 50 waiver to questions of fact, but not to pure questions of law. *In re AmTrust Fin. Corp.*, 694 F.3d 741, 750–51 (6th Cir. 2012) (A "pure question of law . . . may be appealed even in the absence of a post-judgment motion." (internal citation and quotation omitted)). Here, the dispute is unquestionably one of fact—whether Ridgeway signed the non-compete—and therefore waiver applies.

A.

The non-compete agreement at issue contains a forum-selection clause stating that any dispute arising out of the agreement must be brought in a Michigan court—state or federal. When a federal court sitting in diversity exercises personal jurisdiction over a party pursuant to a forum-selection clause, state law controls the question of whether that clause is enforceable. *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 308 (6th Cir. 2007). Michigan law favors forum-selection clauses. *Turcheck v. Amerifund Fin., Inc.*, 725 N.W.2d 684, 689 (Mich. Ct. App. 2006); Mich. Comp. Laws § 600.745. Under Michigan law, the Michigan forum-selection clause is valid and enforceable.

The Michigan court had personal jurisdiction over Ridgeway because he consented to Michigan jurisdiction through the forum-selection clause. *See Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 721 (6th Cir. 2006). Ridgeway has waived his right to challenge personal jurisdiction over him in the Michigan forum. *Id.* Therefore, the district court properly asserted jurisdiction over Ridgeway.[4]

B.

The validity of the choice-of-law clause presents a closer question. A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, the district court was required to apply Michigan choice-of-law rules in determining what law applies in judging the validity of the non-compete. Michigan looks to the Restatement (Second) of Conflict of Laws to determine whether it will enforce a choice-of-law clause. The applicable provision states:

(1)     The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2)     The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . .

---

[4]Stone Surgical does not offer separate grounds to challenge personal jurisdiction over it.

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (1971).

Although there is a plausible argument that § 187(1) applies, because the district court focused on § 187(2), so do we. Michigan law appears to apply the § 187(2) exceptions even when operating under § 187(1) in its choice-of-law analysis. *See Chrysler Corp. v. Skyline Indus. Serv., Inc.*, 528 N.W.2d 698, 703–04 (Mich. 1995).

Under § 187(2)(b), we first determine whether, absent a choice-of-law clause, another state's law would have applied pursuant to § 188. Section 188 states that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." This is determined by consideration of the following factors: "the place of contracting," "the place of negotiation of the contract," "the place of performance," "the location of the subject matter of the contract," and "the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.*

The "place of contracting" is unclear. Under Michigan law, when an offer must be returned to be effective, it becomes operative the moment it is mailed. *Kutsche v. Ford*, 192 N.W. 714, 715 (Mich. 1923). Ridgeway was living in Louisiana when he was hired to work for Stryker, which supports an inference that Ridgeway executed the contract in Louisiana. But Stryker contends that Ridgeway executed the agreement in Mississippi because the cover page of Ridgeway's fax to the company on October 25, 2001, lists a Mississippi area code. Based on the record, it is impossible to say whether the place of contracting is Louisiana or Mississippi, but there is no indication that this factor favors Michigan.

The "place of negotiation" does not strongly favor Michigan or Louisiana. There is little evidence in the record of where the parties negotiated the agreement. To this end, the comments to § 188 note that "[t]his contact is of less importance when . . . the parties do not meet but rather

conduct their negotiations from separate states by mail or telephone." Restatement (Second) of Conflict of Laws § 188, cmt. e.

The third factor, the "place of performance," is primarily Louisiana. The agreement at issue is the non-compete agreement, which limits Ridgeway's ability to engage in the industry within his Louisiana sales territory. Performance of this agreement required Ridgeway to do or refrain from doing certain activities in Louisiana, where he worked as a sales representative. Because the non-compete prevented Ridgeway from competing with Stryker in *Louisiana*, the place of performance was Louisiana.

Again, the "location of the subject matter of the contract" favors finding that Louisiana had the most significant relationship to the transaction at issue. The non-compete agreement tells Ridgeway what he can and cannot do in his Louisiana sales territories, should he leave his employment with Stryker. The comments to § 188 reveal that this factor plays an important role in the analysis of contracts protecting against localized risks:

> When the contract . . . affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of the thing or of the risk is significant. The state where the . . . risk is located will have a natural interest in transactions affecting it. Also the parties will regard the location of the . . . risk as important.

Restatement (Second) of Conflict of Laws § 188, cmt. e. In light of these comments, the location of the subject matter of the contract favors Louisiana.

The final factor, the domicile of the parties, does not favor one state over the other. Stryker is based in Michigan, and Ridgeway is domiciled in Louisiana. This factor has little impact on the § 188 analysis in this case.

Taken on the whole, the state with the "most significant relationship to the transaction and the parties" under § 188 is Louisiana. Absent a choice-of-law clause, Louisiana law would govern the transaction pursuant to § 188. This does not end our inquiry, however. Section 187(2) also requires that the state whose law would apply under § 188 have a "*materially greater* interest than the chosen state in the determination of the particular issue." Restatement (Second) of Conflict of Laws § 187(2)(b) (emphasis added).

While it is true that the state with the most significant relationship to the employment contract and non-compete between Stryker and Ridgeway is Louisiana, it does not necessarily follow that Louisiana's interest is *materially* greater than that of Michigan. This analysis is distinct from determining which state's law would have applied absent a choice-of-law clause. And Michigan certainly has an interest in "the determination of [this] particular issue." *See id.* Stryker is a Michigan corporation, with its headquarters and management centered there. Michigan has a strong interest in protecting its businesses from unfair competition. Stryker will also suffer economic loss as a result of Ridgeway's breach of the non-compete agreement— something Michigan surely has an interest in protecting Stryker, a Michigan company, from suffering.

On balance, Louisiana's interest in protecting its employee from unfair non-compete clauses is not *materially* greater than Michigan's interest in protecting its businesses from unfair competition. *See, e.g.*, *Wallace Sales & Consulting, LLC v. Tuopu N. Am., Ltd.*, No. 15-cv-10748, 2016 WL 1436585, at *4–7 (E.D. Mich. April 12, 2016) (discussing whether a state's interest was materially greater than the chosen law); *Milne v. Accurcast, Inc.*, No. 08-13643, 2010 WL 374176, at *6 (E.D. Mich. Jan. 25, 2010) (same).

Absent such evidence that Louisiana's interest was not just greater but materially greater, there is no reason to disturb the parties' choice of Michigan law. *See Wallace*, 2016 WL 1436585, at *6. We cannot confidently say that the district court should have applied the exception under § 187(2) and disregarded the Michigan choice-of-law clause in favor of applying Louisiana law.

Although Michigan law favors non-competes and Louisiana law severely restricts them, we need not opine on whether these two fundamental policies conflict. Determining that Louisiana's interests in determining the validity of the non-compete are not materially greater

than Michigan's ends our § 187(2) inquiry.  The district court properly applied Michigan law, pursuant to the choice-of-law agreement between Ridgeway and Stryker.**5**

IV.

We review the district court's evidentiary rulings for an abuse of discretion and will reverse only "if the abuse of discretion caused more than harmless error."  *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 378 (6th Cir. 2008) (citation omitted).

A.

Ridgeway challenges the district court's decision to exclude internal Stryker emails from evidence pursuant to the attorney-client privilege.  The two emails at issue include one from Stryker's human resources director to a member of the in-house counsel team, dated two weeks prior to Ridgeway's termination, and a second between the sales team leader and the human resources director, approximately four weeks before this suit was filed.  Both emails allegedly discuss the existence of Ridgeway's non-compete agreement.  The emails were inadvertently produced during discovery and retracted by Stryker under the attorney-client and work product privileges.  Ridgeway argues that the emails fall under the crime-fraud exception and alternatively, that Stryker waived the attorney-client privilege by putting the validity of the non-compete agreement at issue.  These arguments fail.

The crime-fraud exception allows a party to access the contents of privileged communications when an attorney-client relationship is used to advance a crime or perpetrate fraud.  *United States v. Zolin*, 491 U.S. 554, 563–65 (1989).  The party seeking to use the crime-fraud exception must first "make a prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege [and] second[] . . . must establish some relationship between the communication at issue and the prima facie violation."  *In re Antitrust Grand Jury*, 805 F.2d 155, 164–66 (6th Cir. 1986) (emphasis omitted); *see also United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997).

---

**5**The question of whether the non-compete is valid under Michigan law is a question for the jury, who answered in the affirmative.  Michigan law strongly favors non-competes, and we need not second-guess the jury's finding.

Ridgeway argues that the internal Stryker emails show that the company was engaged in fraud.  Specifically, he asserts that Stryker management knew that Ridgeway did not have a non-compete, a fact that Ridgeway alleges they tried to conceal by filing the initial complaint with a form copy of the non-compete rather than with his original agreement.  Ridgeway offered no other evidence to demonstrate that the agreement attached to the complaint was not his, and therefore that Stryker's statement that it was a "true and correct copy" was false.  Nor did Ridgeway offer any further evidence of fraudulent activity.  The law does not permit Ridgeway to rely on the emails themselves to prove the fraud.  The district court did not require Ridgeway to unequivocally prove the fraud but instead asked for some evidence to establish a reasonable basis for believing that fraud occurred.  Because Ridgeway did not make such a showing, the district court did not abuse its discretion by rejecting Ridgeway's crime-fraud-exception argument.

Ridgeway's argument that Stryker put the validity of the non-compete "at issue" also fails because he never raised it before the district court.  He points to two places in the record where he raised this argument: first, in his memorandum in support of the motion to retain disclosed documents; and second, in his appeal to the district court of the magistrate's decision to deny his motion to retain disclosed documents.  However those two sources provide little clarity as to Ridgeway's argument.  It was not until his brief on appeal that he developed these cursory references into a full-fledged argument.  The fact that Ridgeway never raised this alternate argument outside of ambiguous language in two briefs below indicates that the argument was not squarely presented to the district court and, therefore, the argument is waived.[6]

B.

Ridgeway also appeals the district court's denial of his motion for an adverse-inference jury instruction based on Stryker's actions; namely, for attaching the form non-compete as a "true and correct" copy of Ridgeway's agreement instead of the original copy signed by Ridgeway.  But Ridgeway has not explained why Stryker had an obligation to preserve the original 2001 agreement signed by Ridgeway.  Even if Ridgeway returned the agreement to

---

[6]Having found no abuse of discretion in the district court's exclusion of the privileged communications from the record, we also, for the same reasons, deny Ridgeway's motion to supplement the record on appeal.

Stryker when he faxed his acceptance, the company would have had it since 2001, and Stryker did not fire Ridgeway until 2013. Thus, Stryker had no knowledge of potential litigation over Ridgeway's non-compete for twelve years. During that time, the company had no obligation to preserve the agreement as evidence. The district court did not abuse its discretion by refusing to give an adverse-inference jury instruction against Stryker.

V.

For the reasons stated above, we affirm the judgment of the district court.