NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0436n.06

No. 20-3354

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 28, 2020
DEBORAH S. HUNT, Clerk

DOWN-LITE INTERNATIONAL, INC.,

    Plaintiff-Appellee,

v.

CHAD ALTBAIER; PAICE PARTNERS GLOBAL, LLC,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

---

BEFORE: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

The sole issue in this appeal is whether the district court correctly applied Ohio's conflict-of-law rules when it determined Ohio law governs this dispute. Because it did, we affirm.

Plaintiff Down-Lite International, Inc. is a close corporation organized under Ohio law that designs, manufactures, and sells feather-filled products. It employed defendant Chad Altbaier, a California resident, in a variety of capacities for nearly two decades. In 2019, Altbaier formed defendant Paice Partners Global, LLC and resigned from Down-Lite, intending to partner with Down-Lite to sell its down insulation as an independent sales representative. For reasons not important here, Altbaier's exit from Down-Lite became contentious and the parties no longer have a business relationship.

Down-Lite commenced this action in Ohio state court in July 2019, seeking (among other things) to enforce a non-competition covenant contained in the parties' 2013 Shareholder

Agreement. Following removal, the district court granted in part Down-Lite's motion for a preliminary injunction in February 2020. The court significantly narrowed the scope and duration of the covenant from a broad two-year prohibition on any competition "connected in any manner with" Down-Lite's business "within the United States" to as follows: "Altbaier is preliminarily enjoined this date through August 31, 2020 from soliciting, directly or indirectly, or otherwise diverting away from Down-Lite, the sale of down insulation to companies who were Down-Lite's existing outdoor apparel customers as of June 30, 2019." Altbaier appeals interlocutorily, contending only that the district court erred in finding that Ohio law—and not California law—governs this dispute.

"[A] federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits." *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). "Ohio has adopted sections 187 and 188 of the Restatement (Second) of Conflict of Laws to govern choice of law in contract disputes." *Wise v. Zwicker & Associates, P.C.*, 780 F.3d 710, 714–15 (6th Cir. 2015). Section 187(1) honors the parties' contractual commitments: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1) (1971). And here, the agreement's choice-of-law provision specifies that it "shall be governed by and construed in accordance with . . . the laws of the State of Ohio."

Altbaier contends we should set aside this provision under one of the Restatement's limited exceptions. Section 187(2)(b) provides that a court should apply a different state's law, choice-of-law clause notwithstanding, upon satisfaction of three conditions: (1) "application of the law of the chosen state would be contrary to a fundamental policy of a[nother] state"; (2) that other

state "has a materially greater interest than the chosen state in the determination of the particular issue"; and (3) the other state's law would govern the dispute "in the absence of an effective choice of law by the parties" as set forth in § 188 (including considering five factors to aid in determining which state "has the most significant relationship to the transaction and the parties"). *Wise*, 780 F.3d at 715–16 (quoting §§ 187(2)(b), 188(1)). We review de novo the district court's conclusion that the parties' chosen law of Ohio applies. *Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002).

We need only examine the materially-greater-interest prong to show why we will not upset the parties' choice-of-law provision. *See Sekeres v. Arbaugh*, 508 N.E.2d 941, 942–43 (Ohio 1987) (per curiam); *cf. Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1123 (6th Cir. 1987). Altbaier wants California law to apply to this dispute, which would seemingly resolve it in his favor given California's hostility towards covenants not to compete. *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 290–91 (Cal. 2008). His numerous contacts with California provide the foundation for this desire: he has worked for Down-Lite out of his home in California since 2003 and has developed noteworthy and lucrative accounts for its "Outdoor Division" there.

But this is not "one of the rare cases which fits within the exception described in section 187(2)(b)." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 927 (6th Cir. 2006). Although Altbaier has significant connections to California, we cannot say that state has a materially greater interest in determining this dispute than Ohio. Down-Lite is a close Ohio corporation and the Shareholder Agreement containing the covenants at issue is designed to protect its Ohio shareholders. Moreover, Altbaier's work extended well beyond the borders of California (and, the United States, for that matter) when he worked for Down-Lite. *See, e.g.*, *Sekeres*, 508 N.E.2d at 942–43.

In this regard, *Stone Surgical, LLC v. Stryker Corporation* is instructive. 858 F.3d 383 (6th Cir. 2017). *Stone Surgical* also involved an employee working out of his home office (there, Louisiana) wishing to avoid a choice-of-law provision contained in a non-compete designating the law of his employer's home state. *Id.* at 386. And like here, the employee's desired law disfavored covenants not to compete. *See, e.g.*, *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 298 (La. 2001). Although we concluded Louisiana had the "most significant relationship to the transaction and the parties" under the Restatement because the covenant restricted the employee from competing in Louisiana, we held that was not enough to show a "materially greater interest." *Stone Surgical*, 858 F.3d at 390–91. We explained:

> While it is true that the state with the most significant relationship to the employment contract and non-compete between Stryker and Ridgeway is Louisiana, it does not necessarily follow that Louisiana's interest is *materially* greater than that of Michigan. This analysis is distinct from determining which state's law would have applied absent a choice-of-law clause. And Michigan certainly has an interest in "the determination of this particular issue." Stryker is a Michigan corporation, with its headquarters and management centered there. Michigan has a strong interest in protecting its businesses from unfair competition. Stryker will also suffer economic loss as a result of Ridgeway's breach of the non-compete agreement—something Michigan surely has an interest in protecting Stryker, a Michigan company, from suffering.
>
> On balance, Louisiana's interest in protecting its employee from unfair non-compete clauses is not *materially* greater than Michigan's interest in protecting its businesses from unfair competition.
>
> Absent such evidence that Louisiana's interest was not just greater but materially greater, there is no reason to disturb the parties' choice of Michigan law.

*Id.* (brackets and internal citations omitted). The same is true here. California has a meaningful interest in protecting its resident from Down-Lite's desire to restrict competitive conduct. But that interest is not materially greater than Ohio's interest in protecting one of its closely held businesses operating in the global economy. This determination "ends our § 187(2) inquiry." *Id.* at 391.

Altbaier's contention that we should instead follow *Lifestyle Improvement Centers, LLC v. East Bay Health, LLC*, 2013 WL 5564144 (S.D. Ohio Oct. 7, 2013) and *Contech Construction Products, Inc. v. Blumenstein*, 2012 WL 2871425 (S.D. Ohio July 12, 2012) misses the mark. True, those matters both set aside an Ohio choice-of-law provision in favor of California law. But they are unpublished district court opinions that did not have the benefit of *Stone Surgical*'s on-point analysis. They are, moreover, factually distinguishable; *Contech* "concern[ed] a California employee of a Minnesota company going to work for a competitor in California," 2012 WL 2871425, at *13, and *Lifestyle* restricted the opening of a hypnosis franchise serving one California city, 2013 WL 5564144, at *10. Ohio's weighty interest and the (inter)national nature of Down-Lite's business distinguishes these cases.

The Ohio Supreme Court has stated that "[i]t is fundamental to [Ohio's] commercial intercourse that parties have the right to contract freely with the full expectation that their bargain will be permitted to endure according to the terms agreed upon. Any rule of law which would sanction the renunciation of an otherwise valid, voluntary agreement would lead to instability in all of our personal and business contractual relationships and assure multifarious litigation." *Jarvis v. Ashland Oil, Inc.*, 478 N.E.2d 786, 789 (Ohio 1985). Following this guidance, we will not "summarily brush aside the clear and unambiguous terms" of the parties' agreement to adjudicate this dispute under Ohio law. *Id.*; *see also Century Bus. Servs., Inc. v. Barton*, 967 N.E.2d 782, 795 (Ohio Ct. App. 2011) (enforcing the parties' choice-of-law provision of Ohio for non-competes negotiated and performed in Minnesota). Thus, on these facts, we will not allow California's public policy to trump the parties' clear and unambiguous agreement to apply Ohio law.

For these reasons, we affirm the judgment of the district court.